UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARIO CACHO and ANTONIO OCAMPO, ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> SHERIFF MARIN N. GUSMAN, ORLEANS ) <br> PARISH SHERIFF, ) <br> ) <br> Defendant. ) <br> ) | No. _____ <br><br><br> DEMAND FOR JURY TRIAL |

**PLAINTIFFS' ORIGINAL COMPLAINT**

**PRELIMINARY STATEMENT**

1. Mr. Mario Cacho and Mr. Antonio Ocampo, New Orleans reconstruction workers, hereby file this civil rights complaint against Orleans Parish Sheriff Marlin N. Gusman because of his policy and practice of holding them and other New Orleans residents for indefinite periods in his jail without any legal authority and in violation of the United States Constitution and Louisiana law.  In addition to subjecting Plaintiffs to significant harms, including deprivation of liberty and due process, false imprisonment, and negligent infliction of emotional distress, this policy and practice continues to impose significant harms on the New Orleans community, the Orleans Parish Sheriff's Office, and the City of New Orleans.

2. Orleans Parish Sheriff Gusman's policy and practice of submitting to "hold requests" from Immigration and Customs Enforcement (ICE) — also called "immigration

holds" or "immigration detainers" — and holding individuals in indefinite detention on this basis alone, represents a voluntary decision that violated Plaintiffs fundamental rights and harmed the New Orleans Community. An ICE hold request provides no legal authority for Sheriff Gusman to detain individuals beyond 48 hours after the resolution of traffic, municipal, and/or state criminal charges. ICE makes these hold requests on the mere suspicion that an individual has committed a civil immigration violation—a suspicion that is often based on racial profiling alone.

3.  In addition to violating the constitutional rights of and causing significant harm to the Plaintiffs and New Orleans community members held pursuant to these hold requests, Orleans Parish Sheriff Gusman's decision to submit to all voluntary, hold requests and his unconstitutional pattern and practice of unlawfully and indefinitely holding individuals beyond the 48-hour expiration of the hold requests without lawful authority harms community relationships with all law enforcement agencies, wastes scarce Orleans Parish Sheriff's Office resources, and causes economic and other harm to the City of New Orleans and the New Orleans community.

4.  As part of his unconstitutional policies and practices, Orleans Parish Sheriff Gusman unlawfully held Plaintiff Cacho for on or about 164 days in Orleans Parish Prison. Despite filing a grievance with Orleans Parish Prison officials requesting release, Mr. Cacho was only able to secure his release from Orleans Parish Prison by filing a federal civil rights complaint with the Department of Homeland Security's (DHS's) Office for Civil Rights and Civil Liberties. This illegal detention deprived Mr. Cacho of his constitutional rights and caused him and his family significant harms.

5. As part of his unconstitutional policies and practices, Orleans Parish Sheriff Gusman unlawfully held Plaintiff Ocampo for on or about 91 days in Orleans Parish Prison. Despite filing repeated grievances within Orleans Parish Prison and requesting release directly from the warden, Mr. Ocampo was only able to secure his release from Orleans Parish Prison after filing a petition for writ of habeas corpus in federal district court. This illegal custody deprived Mr. Ocampo of his constitutional rights and caused him and his family substantial harms.

6. Orleans Parish Sheriff Gusman's decision to hold New Orleans residents in indefinite detention on expired hold requests from ICE violates the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution and Louisiana law.

7. Orleans Parish Sheriff Gusman has continued this illegal policy and practice despite regular complaints by directly affected individuals and community members since 2009, which put him on notice that his actions were unconstitutional and harmful to the people of New Orleans.

8. To vindicate their and the New Orleans community's fundamental constitutional rights, Mr. Cacho and Ocampo seek compensation for Orleans Parish Sheriff Gusman's unconstitutional deprivation of liberty and the significant resulting harms.

**JURISDICTION AND VENUE**

9. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, and the laws of the State of Louisiana. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.

10. Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b). Defendant resides within the Eastern District of Louisiana, the Plaintiffs reside or resided within

the district during the time the events giving rise to this action occurred, and the events giving rise to this action occurred in the Eastern District of Louisiana.

## PARTIES

11. Plaintiff Mario Cacho is an individual who Sheriff Gusman held in unlawful custody in Orleans Parish Prison for on or about 164 days. At all times relevant to this complaint, Mr. Cacho was a resident of New Orleans.

12. Plaintiff Antonio Ocampo is an individual who Sheriff Gusman held in unlawful custody in Orleans Parish Prison for on or about 91 days. At all times relevant to this complaint, Mr. Ocampo was a resident of New Orleans.

13. Defendant Marlin N. Gusman is the Sheriff of Orleans Parish, Louisiana. Defendant Gusman is sued in his official capacity. Defendant Gusman operates the Orleans Parish Prison. He is responsible for formulating policies that govern custody of all individuals held at Orleans Parish Prison. He is also responsible for the acts and omissions of his agents and employees at Orleans Parish Prison. Defendant Gusman has ultimate supervisory authority over Orleans Parish Prison.

14. At all times relevant to this Complaint, Defendant Gusman acted or failed to act under color of state law.

## LEGAL FRAMEWORK

15. Orleans Parish Sheriff Gusman is the chief law enforcement officer for Orleans Parish.

16. Orleans Parish Sheriff Gusman has a voluntary policy and practice of submitting to hold requests from ICE.[1]

---

[1] The civil immigration laws of the United States are enforced by the Immigration and Customs Enforcement Agency (ICE) of the Department of Homeland Security (DHS). ICE engages in its enforcement responsibilities through various actions. ICE may also seek judicial and

17. Pursuant to his policy and practice of submitting to hold requests from ICE, Orleans Parish Sheriff Gusman regularly holds New Orleans Community members in his custody after his authority to hold them deriving from traffic, municipal, and/or state criminal charges has concluded. This includes situations when the prosecutor has withdrawn the individual's municipal or state criminal charges; a judge has set a criminal bond, which the individual has paid or is ready to pay; or the criminal court has ordered his release because the individual has resolved all penalties for his charges.

18. During this additional detention time, Orleans Parish Sheriff Gusman holds individuals solely pursuant to purported authority vested in him by hold requests from ICE.

19. ICE makes these hold requests to Sheriff Gusman on the mere suspicion that an individual has committed a civil immigration violation— a suspicion that is often based on racial profiling alone.

20. A hold request from ICE is a request— not a requirement— that a local official hold an individual for up to 48 hours (excluding weekends and holidays). 8 C.F.R. § 287.7(a).

21. A hold request from ICE "advises" local officials that DHS may desire to initiate civil immigration proceedings against an individual and/or assume custody of an individual.

22. A hold request from ICE provides no legal authority for a local official to detain an individual beyond 48 hours (excluding Saturdays, Sundays, and federal holidays) after the conclusion of lawful custody based on traffic, municipal, and/or state criminal charges.

23. ICE refers to these temporary hold requests as "immigration detainers" in an attempt to analogize them to intrastate criminal detainers, but this is a misnomer. An intrastate criminal

---

administrative warrants to conduct investigations. ICE may also conduct investigations and upon probable cause, arrest individuals it believes to have committed civil violations of the Immigration and Nationality Act.

"detainer" constitutes an arrest for criminal charges in another state.  The criminal arrest on which the criminal detainer is based requires a showing of probable cause, requires notice to the individual on whom it is placed, and includes a process where the individual can challenge the detainer.  In contrast, a hold request from ICE does not include these basic safeguards to protect fundamental rights.  An ICE hold request does not constitute a criminal arrest and does not require a showing of probable cause or any other standard of proof.  Instead, a so-called "immigration detainer" may be issued based on the mere suspicion that a person is a "noncitizen."  Neither ICE nor the Sheriff is required to inform an individual when an "immigration detainer" is placed upon them, and there is no process for an individual to contest detention pursuant to these "immigration detainers" (hereinafter "hold requests" or "ICE hold requests").

24. A hold request from ICE does not allege or purport to determine whether the individual possesses another valid immigration status or whether the person is eligible for immigration relief.

25. A hold request from ICE is not reviewed by an immigration judge before it is submitted to a local law enforcement agency and imposed on an individual.

## FACTUAL ALLEGATIONS

### A. PLAINTIFF MARIO CACHO

26. Plaintiff Mario Cacho completed his sentence for disturbing the peace, New Orleans Municipal Code 54-405, on August 21, 2009.

27. Upon expiration of his criminal sentence, Orleans Parish Sheriff Gusman continued to hold Plaintiff Cacho in his custody.

28. After August 21, 2009, Orleans Parish Sheriff Gusman held Plaintiff Cacho based solely on the purported authority of a hold request from ICE.

29. ICE originally made this hold request on July 31, 2009.

30. On August 25, 2009, ICE's hold request to Sheriff Gusman regarding Plaintiff Cacho expired.

31. ICE chose not to take custody of Plaintiff Cacho in order to issue an arrest warrant, which would have required a showing of probable cause, on or before August 25, 2009.

32. Plaintiff Cacho remained in the custody of Orleans Parish Sheriff Gusman until on or about February 5, 2010.   Sheriff Gusman held Plaintiff Cacho in unlawful custody in Orleans Parish Prison for on or about 164 days.

33. Between August 25, 2009 and the date of his release from the custody of the Orleans Parish Sheriff, Plaintiff Cacho filed a written grievance to Orleans Parish Prison officials asking to be released.  Plaintiff Cacho gave this grievance to an official at Orleans Parish Prison.

34. Plaintiff Cacho did not receive any response to the written grievance that he filed.

35. Plaintiff Cacho also made numerous oral requests asking to be released to staff of the Orleans Parish Prison.

36. On February 5, 2010, Plaintiff Cacho, through counsel, filed a complaint with the Department of Homeland Security's Office for Civil Rights and Civil Liberties (DHS-CRCL).

37. Following Plaintiff Cacho's civil rights complaint, Orleans Parish Sheriff Gusman released Plaintiff Cacho to ICE.

38. Upon information and belief, Plaintiff Cacho would have remained in Orleans Parish Sheriff's custody indefinitely if he had not taken legal action to defend his rights.

39. Orleans Parish Sheriff Gusman's actions failed to provide Plaintiff Cacho with due process of law.

40. As a direct and proximate result of actions and omissions by Defendant Sheriff Gusman, Plaintiff Cacho suffered loss of liberty.

41. As a reasonably foreseeable direct and proximate result of actions and omissions by Orleans Parish Sheriff Gusman, Plaintiff Cacho suffered substantial damages including physical pain and suffering, emotional distress and harm, embarrassment and other financial losses. Plaintiff Cacho suffered significant emotional distress due to his continued detention without legal basis and the fear that he would be detained indefinitely.

**B.  PLAINTIFF ANTONIO OCAMPO**

42. Plaintiff Antonio Ocampo completed his concurrent sentence for two counts of simple battery, La Rev. St. § 1435, on August 12, 2010.

43. Upon completion of his criminal sentence on August 12, 2010, Orleans Parish Sheriff Gusman continued to hold Plaintiff Ocampo in his custody based solely on the purported authority of a hold request from ICE.

44. ICE originally made this hold request on February 23, 2010.

45. On August 16, 2010, ICE's hold request to Sheriff Gusman regarding Plaintiff Ocampo expired.

46. ICE decided not to take custody of Plaintiff Ocampo in order to issue an arrest warrant, which would have required a showing of probable cause, on or before August 16, 2010.

47. Plaintiff Ocampo remained in the custody of Orleans Parish Sheriff Gusman until November 15, 2010.  Sheriff Gusman held Plaintiff Ocampo in unlawful custody in Orleans Parish Prison for on or about 91 days.

48. Between August 16, 2010 and November 15, 2010, Plaintiff Ocampo filed approximately five written complaints with Orleans Parish Prison officials asking to be released.

49. Plaintiff Ocampo gave each written complaint to an official at the Orleans Parish Prison.

50. Plaintiff Ocampo did not receive any response to the written grievances that he filed.

51. Plaintiff Ocampo also made numerous oral requests asking to be released to staff of the Orleans Parish Prison.

52. On one occasion, Plaintiff Ocampo made an oral request for release to the Warden.

53. On November 12, 2010, Plaintiff Ocampo, through counsel, filed a petition for a writ of habeas corpus. *Ocampo v. Gusman,* no. 10-4309, U.S. Dist. Ct. E.D. La.

54. On November 15, 2010, the Court granted Plaintiff Ocampo's writ of habeas corpus and ordered him released from Orleans Parish Sheriff Gusman's custody.

55. Upon information and belief, Plaintiff Ocampo would have remained in Orleans Parish Sheriff's custody indefinitely if he had not taken legal action to defend his rights.

56. Orleans Parish Sheriff Gusman's actions failed to provide Plaintiff Ocampo with due process of law.

57. As a direct and proximate result of actions and omissions by Orleans Parish Sheriff Gusman, Plaintiff Ocampo suffered loss of liberty.

58. As a reasonably foreseeable direct and proximate result of actions and omissions by Orleans Parish Sheriff Gusman, Plaintiff Ocampo suffered substantial damages including physical pain and suffering, emotional distress and harm, as well as embarrassment and other financial losses.  Throughout his months of unlawful detention, Plaintiff Ocampo suffered extreme emotional distress with no sense of when his prolonged detention would end and he

would be re-united with his family.  Plaintiff Ocampo suffered great distress over each day he was detained when he could not see his young child and be a part of his life.

### C.  LIABILITY OF ORLEANS PARISH SHERIFF GUSMAN

59. Orleans Parish Sheriff Gusman is responsible for establishing policies, procedures, training, and practices that ensure that he only detains individuals that he has legal authority to detain at the Orleans Parish Prison.

60. Pursuant to his authority as Sheriff, Orleans Parish Sheriff Gusman chose to adopt policies and practices that include voluntarily submitting to hold requests from ICE.

61. As a consequence of Orleans Parish Sheriff Gusman's decision to voluntarily submit to hold requests from ICE, and his failure to release detained individuals after the hold requests expire, Plaintiffs Cacho and Ocampo and many other individuals have been held in unlawful custody.

62. Since at least 2009, Orleans Parish Sheriff Gusman has received notice on numerous occasions that his policies and practices are leading to regular instances of excessive and unlawful custody, including holding New Orleans community members long beyond the expiration of the ICE hold requests.

63. On June 18, 2009, community members sent a letter to Sheriff Gusman documenting an individual currently being unlawfully held in the Orleans Parish Prison based merely on an ICE hold request.  In a meeting in response to this letter, Sheriff Gusman acknowledged that ICE hold requests do not allow him to detain an individual for more than 48 hours after the resolution of their traffic, municipal, and/or state criminal charges.  Nonetheless, subsequent to this meeting Sheriff Gusman continued the practice of submitting to ICE hold requests and detaining individuals in custody beyond the 48-hour expiration of these requests.

64. On November 15, 2010, this Court ordered Sheriff Gusman to release Plaintiff Ocampo from unlawful custody after holding Ocampo for on or about 91 days on the basis of an expired hold request from ICE.

65. On January 18, 2011, the New Orleans' Workers Center for Racial Justice filed a request for public records relating to Defendant Gusman's practices and policies regarding immigration detainers pursuant to the Public Records Act of Louisiana, La. Rev. Stat. §44:1 *et seq*.  By law, Sheriff Gusman should have responded to this request within 3 days, or by January 21, 2011.  To date, Sheriff Gusman has failed to provide a response of any kind.

66. Upon information and belief, Sheriff Gusman has not established any policies, procedures, guidance or training regarding the Orleans Parish Prison's legal obligation to release individuals held on the purported authority of an ICE hold request no later than 48 hours after they are otherwise eligible for release.

67. Orleans Parish Sheriff Gusman's actions failed to provide Plaintiffs with due process of law.  In some cases, Sheriff Gusman's decision to submit to these hold requests has prevented individuals from getting their day in court for underlying traffic, municipal, and/or criminal charges.

68. At all times relevant to this complaint, by continuing to hold individuals in custody without lawful authority, Orleans Parish Sheriff Gusman acted in willful, reckless, and callous disregard of Plaintiffs' rights under federal and state law.

69. The costs related to holding Plaintiffs and other individuals solely pursuant to ICE hold requests have been borne by the Orleans Parish Sheriff's Office alone, contributing to its excessive budget shortfalls.  The City of New Orleans has no legal or contractual obligation to pay Orleans Parish Sheriff's Office costs related to a per diem fee for individuals held pursuant

to ICE hold requests. Upon information and belief, the City of New Orleans did not pay such costs related to the incarceration of Plaintiffs or other similarly situated individuals held solely pursuant to ICE hold requests.  The State of Louisiana has no legal or contractual obligation to pay Orleans Parish Sheriff's Office costs related to a per diem fee for individuals held pursuant to temporary ICE hold requests.  Upon information and belief, the State of Louisiana did not pay such costs related to Plaintiffs and has not paid costs related to other individuals held solely pursuant to ICE hold requests.  The U.S. DHS has no legal or contractual obligation to pay Orleans Parish Sheriff's Office costs related to a per diem fee for individuals held pursuant to ICE hold requests.  Upon information and belief, the U.S. DHS did not pay such costs related to Plaintiffs and has not paid costs related to other individuals held solely pursuant to ICE hold requests.

**FIRST CLAIM FOR RELIEF**
FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS
42 U.S.C. § 1983 (DEPRIVATION OF LIBERTY; DUE PROCESS)

70. The foregoing allegations are incorporated by reference.

71. In committing the acts complained of herein, Defendant Gusman acted under color of state law to deprive plaintiffs of liberty without legal authority, in violation of their right to be free from unreasonable search and seizures and their right to due process of law.

72. Defendant Gusman's procedures, policies, customs, and practices including his deliberately indifferent failure to establish adequate procedures, policies, supervision, and training, caused Plaintiffs' injuries and violations of their constitutional rights.

73. As a direct and proximate cause of the violations of constitutional rights by the Defendant, Plaintiffs suffered general and special damages as alleged in this Complaint and are

entitled to compensatory damages, attorney's fees, and costs pursuant to 42 U.S.C. § 1988, and any other relief the Court deems just.

## SECOND CLAIM FOR RELIEF
FALSE IMPRISONMENT, LA. CIV. CODE ART. 2315

74. The foregoing allegations are incorporated by reference.

75. Plaintiffs Cacho and Ocampo bring this claim for damages resulting from their false imprisonment by Orleans Parish Sheriff Gusman.

76. Orleans Parish Sheriff Gusman acted to unlawfully and unreasonably detain the Plaintiffs Cacho and Ocampo against their will and consent and without legal authority.

77. In detaining plaintiffs without lawful authority, Orleans Parish Sheriff Gusman acted with malice, gross negligence, and/or reckless disregard.

78. Plaintiffs Cacho and Ocampo suffered injury as a result of Orleans Parish Sheriff Gusman's actions.

79. Orleans Parish Sheriff Gusman is liable to Plaintiffs Cacho and Ocampo for compensatory damages, and all other damages allowed by law.

## THIRD CLAIM FOR RELIEF
NEGLIGENCE, LA CIV. CODE ART. 2316

80. The foregoing allegations are incorporated by reference.

81. Orleans Parish Sheriff Gusman owed a duty of care to Plaintiffs during the time of their incarceration in Orleans Parish Prison.

82. By committing the aforementioned acts and omissions, Orleans Parish Sheriff Gusman negligently breached his duty of care to Plaintiffs, which directly and proximately resulted in the injuries and damages, including emotional distress that Plaintiffs allege herein.

83. The injuries suffered by Plaintiffs Cacho and Ocampo were a reasonably foreseeable result of Orleans Parish Sheriff Gusman's conduct.

84. Plaintiffs Cacho and Ocampo suffered severe emotional injury as a result of Orleans Parish Sheriff Gusman's actions.

85. Orleans Parish Sheriff Gusman is liable to Plaintiffs Cacho and Ocampo for compensatory damages, and all other damages allowed by law.

## **PRAYER FOR RELIEF**

WHEREFORE, in light of the foregoing facts and arguments, Plaintiffs request that this Court take the following actions:

A. Declare that Defendant Gusman's detention of individuals named in an ICE hold request for more than 48 hours beyond the termination of any detention authority based on traffic, municipal, and/or state criminal charges, is an egregious violation of the rights enshrined in the United States Constitution;

B. Award Plaintiffs compensatory damages, and all other damages allowed by law;

C. Grant Plaintiffs' reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 and any other applicable law;

D. Award Plaintiffs pre-judgment interest and post-judgment interest on any award of damages to the extent permitted by law; and

E. Grant such other relief as the Court deems just and proper.

## **JURY DEMAND**

F. Plaintiffs request a trial by jury.

Respectfully submitted this 2nd day of February 2011,

*s/ Jennifer J. Rosenbaum*

———————————————
Jennifer J. Rosenbaum, Trial Attorney
*Admitted to Practice in the Eastern District of Louisiana*
La. Bar No. 31946
**NEW ORLEANS WORKERS' CENTER FOR RACIAL JUSTICE**
217 N. Prieur St.
New Orleans, LA 70112
Telephone: (504) 309-5165
Facsimile: (504) 309-5205
jjrosenbaum@nowcrj.org

Linton Joaquin
*Pro Hac Vice Motion Pending*
California Bar no. 73547
Joaquin@nilc.org
Karen C. Tumlin
*Pro Hac Vice Motion Pending*
California Bar no. 234691
Tumlin@nilc.org
Melissa S. Keaney
California Bar no. 265306
*Pro Hac Vice Motion Pending*
Keaney@nilc.org
**NATIONAL IMMIGRATION LAW CENTER**
3435 Wilshire Blvd., Suite 2850
Los Angeles, CA 90010
Telephone: (213) 639-3900
Facsimile: (5213) 639-3911