UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARIO CACHO, ET AL.                                    CIVIL ACTION

VERSUS                                                 NO. 11-225-SS

SHERIFF MARLIN N. GUSMAN,
ORLEANS PARISH SHERIFF

**ORDER AND REASONS**

Plaintiffs, the prevailing parties in this federal civil rights action brought pursuant to 42 U.S.C. § 1983, have filed a motion for attorneys' fees and costs.[1] Defendant opposes that motion.[2] Plaintiffs have filed a reply to defendant's opposition.[3]

In this lawsuit, plaintiffs claimed that their rights were violated as a result of defendant's policy and practice of honoring "immigration detainers" from Immigration and Customs Enforcement but then holding individuals beyond the forty-eight hours allowed under such detainers. Plaintiff Mario Cacho claimed that he was illegally detained for approximately 164 days, and plaintiff Antonio Ocampo claimed that he was illegally detained for approximately 91 days. The litigation was resolved by the entry of a consent judgment in which Cacho was awarded $19,294.12, Ocampo was awarded $10,705.88, and defendant's adoption of a new Orleans Parish Sheriff's Office Policy on Immigration and Customs Enforcement Procedures. The consent judgment further provided that defendant would be responsible for plaintiffs' reasonable attorneys' fees and costs.

---

[1] Rec. Doc. 98.

[2] Rec. Doc. 101.

[3] Rec. Doc. 105.

Plaintiffs seek the award of fees pursuant to 42 U.S.C. § 1988. Regarding such fees, the United States Supreme Court has explained:

> Our legal system generally requires each party to bear his own litigation expenses, including attorney's fees, regardless whether he wins or loses. Indeed, this principle is so firmly entrenched that it is known as the "American Rule." But Congress has authorized courts to deviate from this background rule in certain types of cases by shifting fees from one party to another.
> The statute involved here, 42 U.S.C. § 1988, allows the award of "a reasonable attorney's fee" to "the prevailing party" in various kinds of civil rights cases, including suits brought under § 1983. Most of our decisions addressing this provision have concerned the grant of fees to prevailing plaintiffs. When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves as a "private attorney general," vindicating a policy that Congress considered of the highest priority. He therefore should ordinarily recover an attorney's fee from the defendant – the party whose misconduct created the need for legal action. Fee shifting in such a case at once reimburses a plaintiff for what it cost him to vindicate civil rights and holds to account a violator of federal law.

Fox v. Vice, 131 S. Ct. 2205, 2213 (2011) (citations, quotation marks, and brackets omitted).

However, the Supreme Court went on to caution:

> We emphasize, as we have before, that the determination of fees should not result in a second major litigation. The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. *But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.* So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

Id. at 2216 (emphasis added; citations and quotation marks omitted).

Nevertheless, determining what constitutes an appropriate award remains somewhat tricky. As the Supreme Court has also explained:

> Section 1988 provides that a prevailing party in certain civil rights actions may recover "a reasonable attorney's fee as part of the costs." Unfortunately, the statute does not explain what Congress meant by a "reasonable" fee, and therefore

2

the task of identifying an appropriate methodology for determining a "reasonable" fee was left for the courts.

One possible method was set out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (C.A. 5 1974), which listed 12 factors that a court should consider in determining a reasonable fee.[FN4] This method, however, gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results.

> [FN4] These factors were: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Hensley v. Eckerhart, 461 U.S. 424, 430, n. 3, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

An alternative, the lodestar approach, was pioneered by the Third Circuit in Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (1973), appeal after remand, 540 F.2d 102 (1976), and achieved dominance in the federal courts after our decision in Hensley. Since that time, the "lodestar" figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.

Although the lodestar method is not perfect, it has several important virtues. First, in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to the prevailing market rates in the relevant community. Developed after the practice of hourly billing had become widespread, the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Second, the lodestar method is readily administrable, and unlike the Johnson approach, the lodestar calculation is objective, and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.

....

Our prior decisions concerning the federal fee-shifting statutes have established six important rules that lead to our decision in this case.

First, *a "reasonable" fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case.* Section 1988's aim

3

is to enforce the covered civil rights statutes, *not to provide a form of economic relief to improve the financial lot of attorneys.*

Second, the lodestar method yields a fee that is presumptively sufficient to achieve this objective. Indeed, we have said that the presumption is a strong one.

Third, although we have never sustained an enhancement of a lodestar amount for performance, we have repeatedly said that enhancements may be awarded in rare and exceptional circumstances.

Fourth, we have noted that the lodestar figure includes most, if not all, of the relevant factors constituting a "reasonable" attorney's fee, and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation. We have thus held that the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors presumably are fully reflected in the number of billable hours recorded by counsel. We have also held that the quality of an attorney's performance generally should not be used to adjust the lodestar because considerations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate.

Fifth, the burden of proving that an enhancement is necessary must be borne by the fee applicant.

Finally, a fee applicant seeking an enhancement must produce specific evidence that supports the award. This requirement is essential if the lodestar method is to realize one of its chief virtues, i.e., providing a calculation that is objective and capable of being reviewed on appeal.

....

In light of what we have said in prior cases, we reject any contention that a fee determined by the lodestar method may not be enhanced in any situation. The lodestar method was never intended to be conclusive in all circumstances. Instead, there is a strong presumption that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.

Perdue v. Kenny A., 559 U.S. 542, 550 (2010) (emphasis added; citations, footnote, quotation marks, and brackets omitted).

The United States Fifth Circuit Court of Appeals has not entirely abandoned Johnson in light of Perdue, but it has explained:

The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. *The*

4

> *court should exclude all time that is excessive, duplicative, or inadequately documented.* Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). But see Perdue v. Kenny A., 559 U.S. 542, 130 S.Ct. 1662, 1669, 176 L.Ed.2d 494 (2010) (limiting upward adjustments in light of "a strong presumption that the lodestar is sufficient"). The court must provide "a reasonably specific explanation for all aspects of a fee determination." Perdue, 130 S.Ct. at 1676.

Jimenez v. Wood County, Texas, 621 F.3d 372, 379-80 (5th Cir. 2010) (emphasis added; citations omitted). Therefore:

> There is a strong presumption of the reasonableness of the lodestar amount. However, after calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on the relative weights of the twelve factors set forth in Johnson. The lodestar may not be adjusted due to a Johnson factor that was already taken into account during the initial calculation of the lodestar.

Black v. SettlePou, P.C., 732 F.3d 492, 502 (5th Cir. 2013) (citations, footnote, and quotation marks omitted).

Plaintiffs, who obtained a monetary settlement and a change in policy as a result of their lawsuit, clearly qualify as "prevailing parties" in this action, a point which defendant concedes is "undisputed."[4] Defendant does, however, vigorously dispute the amount of attorneys' fees which should be awarded. Two of defendant's arguments concern the factors which must be considered in the determination of the lodestar, i.e. the number of hours "reasonably expended" and the "prevailing hourly rate" which should be applied.

Defendant's primary argument is that the plaintiffs are seeking reimbursement for an unreasonable number of hours. On that point, defendant is correct, but only in part.

---

[4] Rec. Doc. 101, p. 1.

5

Despite plaintiffs' protestations to the contrary, defendant is correct in arguing that this case was at its core a simple one. The underlying *law* on which plaintiffs' claim was based was clear. As defendant accurately and candidly concedes in his opposition to the instant motion: "It was undisputed that defendant has no authority to detain either Plaintiff beyond 48 hours after the termination of their charges or sentences."[5] Rather, the difficulties this case centered on a *factual dispute,* i.e. "when, if ever, the Sheriff received notice from the district attorney or the criminal court that plaintiffs' respective sentences or open charges were terminated, thus starting the 48 hour period of detention under an ICE detainer."[6] Therefore, the bulk of the hours which were "reasonably expended" in this case were devoted to routine discovery aimed at ferreting out the underlying facts. Moreover, plaintiffs correctly note that many of those hours resulted from defendant's refusal or inability to respond to discovery requests in a professional and reasonable manner. Because plaintiffs' counsel were forced to spend many hours conducting discovery and preparing for a trial in a matter which could have been (and should have been) quickly settled, and because that work was largely necessitated by defendant's unreasonable actions and litigation strategies, it is fully appropriate for him to pay for much, but not all,[7] of that work.

---

[5] Id.

[6] Id.

[7] Plaintiffs' counsel are not entitled to be compensated for all hours spent on discovery for several reasons. First, because plaintiffs' discovery requests were often unreasonable, many of defendant's objections to them were legitimate. Moreover, while motions to compel were filed by plaintiffs, those motions were unhelpful to the Court. Because the motions to compel were woefully inadequate, the Court was required to convene numerous conferences which should never have been necessary in order to resolve discovery issues and broker appropriate comprises. In that many of the hours spent on discovery resulted from the unreasonable requests and inadequate performance of plaintiffs' counsel, defendant should not be required to pay the requested amounts in full.

That said, the Court emphatically finds that this case was "overstaffed." Any suggestion that plaintiffs' case necessitated the participation of some ten attorneys from New Orleans, San Francisco, Los Angeles, and Seattle beggars belief. Certainly, the instant motion does not in any way enlighten the Court as to why so many attorneys were needed to litigate a case such as this, much less make any effort to explain to the Court how the bulk of those attorneys put their specific expertise to use. Rather than using their motion to assist the Court in understanding why more than one thousand hours were reasonably necessary to perform legitimate tasks, plaintiffs' counsel have instead essentially handed the Court billing records for ten attorneys with hundreds of vague entries and asked that defendant be instructed to "pay up" in full. That simply is not how this process works.

Essentially left to its own devices with little more than a mound of billing records before it, the Court obviously cannot "achieve auditing perfection" with respect to the pending motion; however, it will nevertheless make a good-faith attempt to meets its obligation to do "rough justice." See Fox v. Vice, 131 S. Ct. 2205, 2216 (2011). Based on a review of the billing records, it is apparent that the yeoman's work in this case was borne by Jennifer Rosenbaum and Yihong "Julie" Mao of the New Orleans Workers' Center for Racial Justice. For example, the billing records indicate that they performed most of the activities central to the litigation, such as interviewing the plaintiffs and fact witnesses, performing the legal research, drafting and filing the complaint, participating in the settlement and discovery conferences, conducting depositions, and drafting the consent judgment. However, because they were relatively new attorneys with a seemingly limited practice which did not necessarily give them the breadth of expertise necessary to litigate a case

involving "cross-over issues ... between the immigration and criminal justice systems,"[8] the Court surmises that they also reasonably wanted to avail themselves of attorneys with more experience and specialized knowledge to assist and guide them. The Court notes that two attorneys from National Immigration Law Center in Los Angeles, Linton Joaquin and Melissa Keaney, in particular appear to have provided tangible assistance. Therefore, Rosenbaum, Mao, Joaquin, and Keaney will be awarded fees for the hours they reasonably expended on this litigation up to and including the entry of the consent judgment.

However, plaintiffs' remaining attorneys, Karen Tumlin and Nicholas Espiritu of the National Immigration Law Center and Elizabeth Stevens, Melissa Anderson, William Molinski, and Frank Scaduto of Orrick, Herrington & Sutcliff, LLP, will not be awarded fees. The Court in no way means to demean any of these attorneys or impugn their motives; rather, the Court simply finds that their participation was unnecessary given the relative simplicity of this case. That finding is supported by the fact that the work reflected on their billing records was clearly excessive and duplicative, appearing primarily to consist of vague brainstorming and seemingly unnecessary and repetitive review and consultations. The bottom line is this: While this Court cannot definitively say that the efforts of the remaining attorneys were of no ultimate value to the case, the Court can readily say that their vague billing entries do not constitute adequate documentation of the necessity or reasonableness of those efforts.

Accordingly, based on the content of plaintiffs' motion and the records offered in support, the Court finds that only the following hours were reasonably expended in this litigation:

---

[8] Rec. Doc. 98-3, p. 19.

| Jennifer Rosenbaum | 110.3[9] |
| Yihong "Julie" Mao | 90.97[10] |
| Linton Joaquin | 8.35[11] |
| Melissa Keaney | 75.8[12] |

Having thus determined the hours reasonably expended by plaintiffs' attorneys, the Court must next determine the appropriate hourly rates to be awarded. In their original motion, plaintiffs concede that the rates are to be based on the prevailing market rates in the community where the court sits; however, in their reply memorandum, they change their view and argue that counsel should be awarded rates based on the prevailing market rates in their home jurisdictions.[13] In a

---

[9] In reaching this figure, the hours billed on the following dates were disallowed: 1/27/11; 2/13/11; 2/15/11; 2/16/11 (0.3 hours); 3/6/11 (2.5 hours); 6/5/11; 6/7/11; 7/27/11; 7/28/11; 10/16/11; 5/9/12; 8/7/13; and 8/22/13. See Rec. Doc. 98-6, pp. 7-11.

[10] The hours billed on the following dates were disallowed: 1/29/13; 2/27/13; 4/15/13; 5/6/13; 5/10/13; 5/13/13; 6/11/13; 6/13/13; 6/14/13; and 8/22/13. See Rec. Doc. 98-6, pp. 13-15.

[11] Only the hours billed on the following dates were allowed: 1/31/11; 2/2/11; 3/10/11 (0.4 hours); 3/11/11 (0.4 hours); 10/29/11; 10/31/11 (0.25 hours); 5/21/12; 8/22/12; 2/8/13 (0.7 hours); 6/17/13; and 6/18/11 (1.1 hours). See Rec. Doc. 105-1, pp. 10-12.

[12] Only the hours billed on the following dates were allowed: 1/5/11; 1/10/11; 1/25/11; 2/2/11; 2/16/11; 2/17/11 (1 hour); 2/23/11; 3/4/11; 3/11/11 (0.33 hours); 3/22/11; 9/15/11; 10/26/11; 10/31/11; 11/16/11; 11/17/11 (0.83 hours); 12/15/11 (0.83 hours); 1/18/12; 1/19/12 (0.17 hours); 3/11/12 (0.67 hours); 3/12/12 (0.33 hours); 4/23/12; 4/30/12; 5/1/12 (1.6 hours); 5/3/12; 5/10/12; 5/13/12 (2.5 hours); 5/14/12; 5/17/12; 5/21/12 (0.33 hours); 5/29/12; 6/5/12; 9/17/12; 9/26/12; 9/27/12; 10/4/12 (0.33 hours); 10/10/12; 1/8/13 (0.67 hours); 1/15/13; 1/22/13 (0.67 hours); 1/23/13; 2/14/13 (0.5 hours); 2/26/14 (1.33 hours); 2/27/13 (0.5 hours); 2/28/13 (1.34 hours); 3/5/13 (1.17 hours); 3/6/13; 3/7/13 (0.66 hours); 3/9/13; 3/11/13; 3/13/13; 4/8/13 (1.17 hours); 4/15/13; 4/16/13; 4/17/13 (0.33 hours); 4/18/13 (0.17 hours); 4/23/13; 4/25/13; 5/29/13; 6/5/13 (0.33 hours); 6/6/13; 6/11/13 (0.33 hours); 6/12/13; 6/13/13; 6/15/13; 6/18/13; 7/8/13; 7/10/13; 7/26/13; and 8/1/13. See Rec. Doc. 105-1, pp. 13-18.

[13] Rec. Doc. 105, p. 6.

word: No. It is beyond cavil that the general rule is that the prevailing local rates apply. McClain v. Lufkin Industries, Inc., 649 F.3d 374, 381 (5th Cir. 2011) ("In an unbroken and consistent line of precedent, this court has interpreted rates 'prevailing in the community' to mean what it says. Thus, as early as 1974, this court required district courts to consider the customary fee for similar work 'in the community.'"). While that general rule need not apply in "unusual cases" where there is "abundant and uncontradicted evidence prov[ing] the necessity of ... turning to out-of-district counsel," id. at 382, plaintiffs have failed to adequately show that this is such a case. Absent such evidence, this Court will apply the general rule. While the Court expresses its gratitude to the out-of-state counsel for their service to and interest in our community, they voluntarily chose to litigate a case in the Eastern District of Louisiana and will be awarded no more than the prevailing rates in this district.

In deciding the applicable prevailing rates for the four attorneys being awarded fees, the Court notes that only Linton Joaquin had extensive years of experience, having been admitted to practice in 1977. Joaquin requests an hourly fee of $550; however, even considering his years of experience and expertise, that rate clearly exceeds the prevailing rates in this market. An appropriate rate for Joaquin is $350 per hour. See, e.g., Gros v. New Orleans City, Civ. Action Nos. 12-2322, 12-2334, and 12-2374, 2014 WL 2506464, at *11 and *13 (E.D. La. June 3, 2014) (Barbier, J.) (awarding $350 per hour to civil rights attorneys with twenty-one to forty-two years of experience).

The three remaining attorneys being awarded fees, no matter how knowledgeable and otherwise qualified, had significantly less experience, having been in practice for much shorter

periods of time as follows: Jennifer Rosenbaum, admitted in 2003 (requesting $310 per hour); Melissa Keaney, admitted in 2009 (requesting $230 per hour); and Yihong "Julie" Mao, admitted in 2011 (requesting $200 per hour). As a result, it is appropriate that their lesser experience should be reflected in lesser hourly rates. An hourly rate of $185 is appropriate for Rosenbaum, while $150 per hour is appropriate for Keaney and Mao. See, e.g., Gros, 2014 WL 2506464, at *11 (awarding $185 per hour to a civil rights attorney with seven years of experience).

    As to any possible adjustments of these fees based on the Johnson factors, plaintiffs request no upward adjustment.[14] Defendant, however, requests an additional downward adjustment based on the fact that plaintiffs received only $30,000 in compensatory damages.[15] It is true that "the most critical factor in determining the reasonableness of a fee award in a civil rights suit is the degree of success obtained." Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th Cir. 1998). Nevertheless, it is also clear that "[t]here is no strict rule or maximum limit on the permissible ratio of fees to damages." Lewallen v. City of Beaumont, 394 Fed. App'x 38, 46 (5th Cir. 2010). Moreover, "[s]uccess is not measured merely based on the recovery of monetary damages, as a civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards." Norsworthy v. Nguyen Consulting and Services, Inc., No. 14-40017, 2014 WL 3338795, *1 (5th Cir. July 9, 2014) (quotation marks omitted). Here, plaintiffs argue, and the Court agrees, that it is not appropriate to measure their success by looking only to the monetary damages

---

[14] Rec. Doc. 98-3, p.18; see also Rec. Doc. 105, p. 9.

[15] Rec. Doc. 101, p. 6.

11

in light of the significant policy changes they achieved as part of, and as a direct result of, their lawsuit. The Court therefore declines to make a downward adjustment based on this factor.

Accordingly, the Court will award attorneys' fees as follows:

| Attorney | Hours | Hourly Rate | Total |
| --- | --- | --- | --- |
| Jennifer Rosenbaum | 110.3 | $185 | $20,405.50 |
| Yihong "Julie" Mao | 90.97 | $150 | $13,645.50 |
| Linton Joaquin | 8.35 | $350 | $2,922.50 |
| Melissa Keaney | 75.8 | $150 | $11,370.00 |
| | | | **$48,343.50** |

Lastly with respect to fees, the Court notes that plaintiffs have also requested "fees on fees" for the time spent on preparing the instant motion for attorneys' fees. The Court declines to award any such additional fees in this case. As already explained, the instant motion was inadequate and wholly unhelpful to the Court, and therefore an award of fees for its preparation is not warranted.

Plaintiffs also seek an award of costs and expenses in the amount of $7,647.29. Defendant does not address or in any way challenge those costs and expenses in his response to plaintiffs' motion. The Court will therefore award all of the requested expenses and costs except for the $191.43 sought to reimburse for travel from Los Angeles to New Orleans by Karen Tumlin for the filing of the complaint. The Court's records reflect that the complaint in this case was filed *electronically* by *Rosenbaum*. The request for reimbursement of Tumlin's cross-country travel, supposedly for this purpose, is unsupported and patently unreasonable.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Attorneys' Fees and Costs is **GRANTED IN PART AND DENIED IN PART.**

**IT IS ORDERED** that plaintiffs are awarded attorneys' fees in the amount of **$48,343.50**.

**IT IS ORDERED** that costs and expenses are awarded in the amount of **$7,455.86**.

New Orleans, Louisiana, this twenty-ninth day of September, 2014.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**