# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARIO CACHO AND ANTONIO OCAMPO,<br><br>     PLAINTIFFS,<br><br>v.<br><br>SHERIFF MARLIN N. GUSMAN, ORLEANS PARISH SHERIFF,<br><br>     DEFENDANT. | Civil Action No. 2:11-cv-225<br><br>Judge: ___ - ___ |

# THE STATE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO TERMINATE OR DISSOLVE THE CONSENT DECREE (ECF NO. 96)

## INTRODUCTION

In May 2024, the Louisiana Legislature changed state law to require that state and local law enforcement agencies comply with immigration detainers issued by U.S. Immigration and Customs Enforcement (ICE). *See* 2024 La. Sess. Law Serv. Act 314 (S.B. 208). That change in law should have spelled the end of the decade-old consent decree between former Orleans Parish Sheriff Marlin Gusman and two of his former detainees at the heart of this case. Indeed, by its own terms, the consent decree has no "effect" after such "a change in … state law applicable to immigration detainers." ECF No. 96 ¶ 4.

Termination or dissolution of that consent decree would allow the Orleans Parish Sheriff's Office (OPSO) not only to comply with state law regarding immigration detainers and public records but also to stop its obstruction of lawful federal immigration enforcement. Such interference—on taxpayer dime no less—only hurts the people of Louisiana by allowing for senseless acts of violence committed by people who are illegally in our country. *See, e.g.*, Stephen Melancon, *Nicholls State student victim of hammer attack near campus; suspect arrested*, 4WWL (Feb. 10, 2025), t.ly/LnE4t.

Even though the consent decree is no longer valid by its own terms, the existing parties have not moved for dissolution. *See* Chris Joseph, *"I cannot do ICE's work;" Orleans Sheriff vows to follow settlement agreement over holding ICE targets*, Fox 8 (Dec. 30, 2024), t.ly/EWekU; Kati Weis, *As ICE ramps up immigration sweeps, New Orleans' sanctuary city status could be put to the test*, CBS Evening News (Feb. 8, 2025), t.ly/Q-jjB. The State thus intervenes to respectfully request that the Court

either terminate or dissolve the consent decree. The judgment is immediately terminable and subject to an automatic stay under the Prison Litigation Reform Act (PLRA). And in all events, dissolution under rule 60(b) is appropriate because the change in state law as it relates to immigration detainers either (a) released or satisfied the consent decree's obligations or (b) renders the consent decree no longer equitable. For these reasons, the Court should terminate or dissolve the consent decree.

## BACKGROUND

**a.** In 1986, Congress passed the Immigration Reform and Control Act, Pub. L. 99-603, 100 Stat. 3359 (1986). Among a slew of other measures to curb illegal immigration, the Act gave federal immigration officers the authority to issue immigration detainers—effectively creating a cooperative federalism scheme to hold any "alien who is arrested" by a state or locality and who is "not lawfully admitted to" or "present in the United States" until he can be transferred to federal custody. 8 U.S.C. § 1357(d).

Federal immigration officers issue these detainers by way of "a Form I-247 Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency." 8 C.F.R. § 287.7(a); *see generally* U.S. Immigration and Customs Enforcement, *Immigration Detainers*, t.ly/NbBtE (last visited Feb. 13, 2025). An immigration detainer tells that state or local agency that ICE "seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a). It also asks that the agency notify ICE "prior to release of the alien" so that ICE can "arrange to assume custody, in

situations when gaining immediate physical custody is either impracticable or impossible." 8 C.F.R. § 287.7(a). To better facilitate that change in custody, detainers also serve as a request to "maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by" ICE. 8 C.F.R. § 287.7(d).

Louisiana's state and local law enforcement agencies have long cooperated with federal immigration enforcement and with immigration detainers. Indeed, such cooperation and communication is required by federal law. *See* 8 U.S.C. § 1373(a) (state and local agencies "may not prohibit, or in any way restrict" sharing immigration status information with ICE). Before 2014, the OPSO also cooperated.

**b.** In February 2011, however, two former OPSO detainees subjected to immigration detainers sued former-Sheriff Marlin Gusman. ECF No. 1, Compl. Plaintiffs accused former-Sheriff Gusman of detaining them beyond their scheduled release date because of ICE immigration detainers. Compl. ¶ 2. Their detentions beyond their release dates, they claimed, were caused by former-Sheriff Gusman's "deliberately indifferent failure to establish adequate procedures, policies, supervision, and training" as it related to immigration detainers. Compl. ¶ 72. At the outset of the case, Plaintiffs never even requested injunctive relief. Compl. at 14. After nearly a year of litigating before Judge Engelhardt, the parties together consented to proceed before a Magistrate Judge. ECF No. 25.

Before the case reached a bench trial, in July 2013, Plaintiffs and former-Sheriff Gusman agreed to a consent decree to resolve the civil action. ECF Nos. 94,

3

95. The next month, this Court approved the "Consent Judgment for Injunctive Relief and Damages" based on the parties' agreement. ECF No. 96. The consent decree required former-Sheriff Gusman to "adopt and implement the Orleans Parish Sheriff's Office Policy on Immigration and Customs Enforcement (ICE) Procedures," attached as an exhibit to the consent decree. ECF No. 96 ¶ 4; ECF No. 96-2 (Policy). According to the Court's consent decree, that policy would have "permanent effect, absent a change in federal or state law applicable to immigration detainers." ECF No. 96 ¶ 4. Former-Sheriff Gusman also agreed to pay Plaintiffs compensatory damages and to designate Plaintiffs as prevailing parties for the purposes of fees under 28 U.S.C. § 1988. ECF No. 96 ¶ 6–7. Under the consent decree, this Court would "retain jurisdiction over this action in order to enforce" implementation of the policy and to "resolve any disputes" that mediation could not. ECF No. 96 ¶¶ 8–10. The New Orleans Workers' Center for Racial Justice and National Immigration Center agreed to continue to serve as "Plaintiff Representatives" in those future disputes. ECF No. 96 ¶ 8.

The consent decree was accompanied by a Settlement Agreement signed by both parties' attorneys. ECF No. 96-1. That agreement purports to "impose binding obligations upon the Parties and their successors" for "full and complete resolution of the issues." ECF No. 96-1 ¶ 1. It also reiterates the damages and fees obligation and the Court's retention of jurisdiction, along with additional standard contractual language not in the consent decree. *See* ECF No. 96-1 ¶¶ 6–24. The agreement also repeats the requirement that former-Sheriff Gusman will "adopt and implement" the

policy, which would "remain permanently in effect absent a change in federal or state law applicable to immigration detainers." ECF No. 96-1 ¶ 4.

The consent decree's mandated one-page policy was also attached as an exhibit. ECF No. 96-2. The policy requires the Sheriff to "decline" all "ICE criminal warrants" unless the detainee is being prosecuted with murder, rape, kidnapping, treason, or armed robbery. *Id.* It also forbids the Sheriff from investigating the immigration status of any individual in OPSO custody or providing that information to ICE. *See id.* The policy bans the Sheriff from permitting ICE agents to interview any OPSO detainee without a court order. *Id.* And it requires the Sheriff to spend taxpayer funds by facilitating legal counsel for detainees who are interviewed by ICE. *Id.* That policy remains in effect today.

**c.** Much has changed in the intervening decade. For one, in December 2021, Susan Hutson unseated Marlin Gusman as Orleans Parish Sheriff. For another, last year, Louisiana changed its law applicable to immigration detainers. *See* 2024 La. Sess. Law Serv. Act 314 (S.B. 208) (codified at La. R.S. 33:81 *et seq.*). Effective May 2024, a "state entity, law enforcement agency, or local governmental entity may not adopt or have in effect a sanctuary policy." La. R.S. 33:82. Instead, they must "use best efforts to support the enforcement of federal immigration law," which includes cooperating with ICE information requests, maintaining immigration records, and exchanging information with other federal and state law enforcement entities. La. R.S. 33:83. When one of the entities and agencies receives an immigration detainer for one of its detainees, the entity or agency must (1) notify the judge of the

5

immigration detainer for recordation as a minute entry and (2) record that detainer in the detainee's file to "comply with the requests made in the immigration detainer." La. R.S. 33:84(A)–(C). Local law enforcement agencies are further expected to enter into "compliant agreement[s]" for temporary detention of those detainees by federal immigration enforcement. La. R.S. 33:84(D). The Attorney General can enforce any violation of that law by seeking an injunction and declaration against the violating local entity or agency. La. R.S. 33:85.

Despite the "change in … state law applicable to immigration detainers," ECF No. 96 ¶ 4—which ends the consent decree by its own terms—neither party has moved for dissolution of the consent decree. *See* Chris Joseph, *"I cannot do ICE's work;" Orleans Sheriff vows to follow settlement agreement over holding ICE targets*, Fox 8 (Dec. 30, 2024), t.ly/EWekU; Kati Weis, *As ICE ramps up immigration sweeps, New Orleans' sanctuary city status could be put to the test*, CBS Evening News (Feb. 8, 2025), t.ly/Q-jjB.

**ARGUMENT**

"The principle is well settled that local governmental units are created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them in its absolute discretion." *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 437 (2002). The Court should thus restore State control—and our State's compliance with both state and federal law—by terminating or dissolving the consent decree under either the PLRA or Rule 60(b).

6

## I. The Consent Decree Should Be Terminated Under the PLRA.

### A. This Civil Action and Its Resulting Prospective Injunctive Relief Are Governed by the PLRA.

This is a PLRA case to its core. The PLRA's limitations on prospective injunctive relief apply "in any civil action with respect to prison conditions." 18 U.S.C. § 3626(a)(1). Such a "civil action with respect to prison conditions" is "any civil proceeding arising under Federal law with respect to the conditions of confinement *or* the effects of actions by government officials on the lives of persons confined in prison." *Id.* § 3626(g)(2) (emphasis added).

This case falls into the latter camp—a broad statutory category sweeping up all "actions" that might "make" "the lives of prisoners" "worse." *Booth v. Churner*, 206 F.3d 289, 295 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001); *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001) (same); *Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir.1999) (same); *see, e.g.*, *Handberry v. Thompson*, 446 F.3d 335, 344–45 (2d Cir. 2006) (PLRA applies to "challenges [to] the adequacy of the defendants' provision of educational services and related ancillary services to inmates"); *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014) ("challenge to parole procedures is a civil action with respect to prison conditions under the PLRA.").

No one can seriously contend that this civil action arising under federal law is not "with respect to … the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2). Plaintiffs challenged former-Sheriff Gusman's "policy and practice of submitting to 'hold requests' from Immigration and Customs Enforcement"—the government official's action. Compl.

7

¶ 2. They did so because his action results in what-they-called "indefinitely holding individuals beyond the 48-hour expiration of the hold requests"—that is, it has "effects … on the lives of persons confined in prison." Compl. ¶ 3. And the suit arises under 42 U.S.C. § 1983—federal law. Compl. ¶¶ 70–73. The PLRA thus unquestionably governs here.

### B. The Court Should Terminate the Prospective Relief Under the PLRA.

Under the PLRA, the decade-old consent decree's grant of prospective relief without any of the PLRA's guardrails should be immediately terminated and subject to an automatic stay—especially now that the judgment has ended by its own terms. In a PLRA suit "in which prospective relief is ordered," an "intervener" may move to terminate such relief "2 years after the date the court granted or approved the prospective relief." 18 U.S.C. § 3626(b)(1)(A)(i); *see id.* § 3626(c) ("Consent decrees" are subject to the same "limitations on relief"). As an "intervener," the State "shall be entitled to *immediate* termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right," *id.* § 3626(b)(2) (emphasis added)—or until the Court does so. *Id.* § 3626(b)(3).

Nothing in the record suggests that the ongoing prospective relief in the consent decree was ordered in compliance with the PLRA's prospective relief boundaries. *See* 18 U.S.C. § 3626(a). That is an independent basis for termination. But even more fundamentally, because state law on immigration detainers has

changed, the consent decree has ended by its own terms. That, too, is an independent basis for termination.

Accordingly, the State moves to terminate that prospective relief immediately and respectfully requests that the Court order the parties to show cause why the consent decree should not be immediately terminated. And because the PLRA demands a "prompt[] rul[ing]" on any "motion to … terminate prospective relief," such motions "operate as a stay" from the "30th day after such motion is filed" until "the date the court enters a final order ruling on the motion." 18 U.S.C. § 3626(e)(2); *see Miller v. French*, 530 U.S. 327, 331 (2000). In this case, that automatic stay will begin on March 15, 2025.

## II. Alternatively, the Court Should Dissolve the Consent Decree Under Rule 60(b)(5).

The Court can alternatively dissolve the consent decree under Rule 60(b)(5). As the en banc Fifth Circuit recently stressed, "consent decrees are 'not intended to operate in perpetuity.'" *Chisom v. Louisiana ex rel. Landry*, 116 F.4th 309, 316 (5th Cir. 2024) (en banc). "Once the alleged constitutional deficiency has been remedied, it is the courts' duty to bring federal control over the issue to its proper end." *Id.* Rule 60(b)(5) provides two relevant mechanisms to reach that proper end here—each independently a basis for dissolution.

### A. The Consent Decree Has Been Satisfied, Released, or Discharged.

Rule 60(b)(5) allows relief from a consent decree that "has been satisfied, released, or discharged." Fed. R. Civ. P. 60(b)(5). Upon such a motion, a court must "analyze a request for one's dissolution" by looking "within its four corners, and not

9

by reference to what might satisfy the purposes of one of the parties to it." *Chisom*, 116 F.4th at 317–18. After all, "it is the language of a consent decree that defines the obligations of the parties," *id.* at 316, because consent decrees are "at their core, contracts," *id.* at 318. And "the appropriate standard in assessing the satisfaction of contractual terms is 'substantial compliance.'" *Id.*; *Frew v. Janek*, 820 F.3d 715, 721 (5th Cir. 2016) (same).

Based on the plain terms of the consent decree here, "the resolution of this matter is plain." *Chisom*, 116 F.4th at 320. The consent decree, by its own terms, has "permanent effect, *absent a change in federal or state law applicable to immigration detainers*." ECF No. 96 ¶ 4 (emphasis added); *see also* ECF No. 96-1 ¶ 4 (same in settlement agreement). In 2024, with the passage of Act 314, the Louisiana Legislature changed state law applicable to immigration detainers. That substantial compliance by the consent decree's own terms means "the judgment has been satisfied," released, or discharged within the terms of Rule 60(b)(5) and it "puts an end" to the consent decree. *Chisom*, 116 F.4th at 320.

### B. The Consent Decree Is Also No Longer Equitable to Apply Prospectively Because State Law Has Changed.

Rule 60(b)(5) also allows a party to seek relief from a consent judgment when "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). A judgment is no longer equitable "if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)). A court has the "power to revoke or modify its mandate, if it is satisfied

that what it has been doing has been turned through changing circumstances into an instrument of wrong." *United States v. Swift & Co.*, 286 U.S. 106, 114–15 (1932). And in that situation, a court should invoke that power. *See Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961). Indeed, it "errs when it refuses to modify an injunction or consent decree in light of such changes." *Agostini v. Felton*, 521 U.S. 203, 215 (1997). Here, the public expressed its interest through duly elected representatives and duly enacted legislation. *See* 2024 La. Sess. Law Serv. Act 314 (S.B. 208). And the public interest was unequivocal: State and local law enforcement agencies must cooperate with federal immigration officials. With the change in state law, the ongoing enforcement of the consent decree is detrimental to—indeed, outright forbids—the people's interest today. It is thus no longer equitable to continue to enforce the consent decree—yet another independent basis to dissolve it.

## CONCLUSION

The State respectfully requests the Court terminate or dissolve the consent decree.

Dated: February 14, 2025        Respectfully submitted,

**ELIZABETH B. MURRILL**
**Attorney General of Louisiana**

 /s/ Zachary Faircloth
J. BENJAMIN AGUIÑAGA*
  *Solicitor General*
ZACHARY FAIRCLOTH (La #39875)
  *Principal Deputy Solicitor General*
OFFICE OF THE LOUISIANA ATTORNEY
GENERAL
1885 North Third Street
Baton Rouge, LA 70802
Telephone:  (225) 326-6705
Facsimile:   (225) 326-6795
aguinagab@ag.louisiana.gov
fairclothz@ag.louisiana.gov

*Counsel for the State of Louisiana*

**pro hac vice forthcoming*