**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| MARIO CACHO AND ANTONIO OCAMPO | |
| Plaintiffs, | Case No.: 2:11-cv-225 |
| v. | HON. JANIS VAN MEERVELD |
| SHERIFF MARLIN N. GUSMAN, ORLEANS PARISH SHERIFF; | DIVISION: (1) |
| Defendant. | |

**PLAINTIFFS' OPPOSITION TO THE STATE OF**
**LOUISIANA'S MOTION TO INTERVENE**

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

INTRODUCTION………………………………………………………    1

I.    LEGAL BACKGROUND AND PROCEDURAL HISTORY…………    2

II.    ARGUMENT …………………………………………………    4

    a.    The State Is Not Entitled to Intervention as of Right………………..    4

        i.    The State lacks a "direct, substantial, and legally
protectable" interest...……………………………………..    5

        ii.    The State Has Not Demonstrated Impairment
of Impediment……………………………………    9

        iii.    The State Has Not Demonstrated That OPSO
Does Not Adequately Represent its Interests
in This Litigation……………………………………    14

    b.    The State Is Not Entitled to Permissive Intervention………………..    18

    c.    The State Has Not Effectuated Proper Service of the
Motion to Intervene……………………………………    20

    d.    The State's Participation Should Be Limited to
*Amicus Curiae* Only……………………………………    23

III.    CONCLUSION……………………………………………    24

**INTRODUCTION**

Plaintiffs Mario Cacho and Antonio Ocampo[1] (collectively, "Plaintiffs") oppose the State of Louisiana's ("State") Motion to Intervene, which seeks leave to intervene in this case for the purpose of terminating or dissolving this Court's August 9, 2013 consent judgment, Dkt. 96. The consent judgment ordered by this Court addressed a longstanding and rampant pattern of unlawful and prolonged detention of immigrants in Orleans Parish. For years, these practices violated the constitutional rights of liberty and due process of many residents.

In 2024, Louisiana enacted Senate Bill 208 ("S.B. 208"). S.B. 208, among other things, purports to require local law enforcement to cooperate with immigration officials and comply with U.S. Immigration Customs Enforcement's ("ICE") requests to provide advance notice before releasing individuals in their custody. The State now moves to intervene in this case, almost 12 years later, to terminate the longstanding consent judgment on this basis.

The question presented by the State's motion is whether its asserted interests are sufficient under Federal Rule of Civil Procedure 24 to justify intervention. Plaintiffs strongly object.[2] Not only are there mediation mechanisms set in place in the consent judgment to address any dispute of the terms or lack of compliance, but the State also falls short of the minimum requirements of Rule 24 for the intervention to terminate or dissolve the substance of the Court's longstanding public-interest ruling.  In fact, the State largely ignores these requirements, devoting most of its motion to matters not within the scope of Rule 24. The State neglects to show that it has "an interest relating to the property or transaction that is the subject of [this] action" or that its interests are not already adequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2). Further, the State has not demonstrated that its interests are impaired or impeded because it has multiple alternative means

---

[1] Due to a change in Plaintiff Antonio Ocampo's circumstances since the consent judgment was issued, a motion to proceed under pseudonym is forthcoming.

[2] The State's filing states that Plaintiffs "have not responded" to the request to obtain consent for the intervention motion. Dkt. 112 at 1. Plaintiffs' counsel were never contacted in advance of the filing of this motion, as is required by Local Rule 7.6.

by which it can protect any interest in this case. The State's participation would only serve to disrupt and unduly prejudice the established resolution of this litigation. For these reasons, Plaintiffs respectfully request the Court deny the State's Motion to Intervene in its entirety. Plaintiffs request oral argument of the motion.

## I.   LEGAL BACKGROUND AND PROCEDURAL HISTORY

This litigation began in 2011, when Plaintiffs Mario Cacho and Antonio Ocampo filed suit against Defendant Sheriff Marlin Gusman[3] alleging civil rights and state law violations stemming from their overdetention in the Orleans Parish Prison. Dkt. 1 (Compl.). As alleged in the complaint, both Plaintiffs were detained in the jail for several months after the minor criminal charges against them were resolved. Mr. Cacho had been arrested for a municipal violation of disturbing the peace, but was held for over five months in 2009 and 2010 after completing the criminal sentence. Compl. ¶¶ 26–32. Mr. Ocampo had been arrested for misdemeanor simple battery but was held for over three months in 2010 after completing that sentence. Compl. ¶¶ 42–47. In both cases, ICE had made a temporary hold request[4] to the Orleans Parish Sheriff's Office ("OPSO"). Compl. ¶¶ 29, 44. Plaintiffs alleged that they would have been held in indefinite detention but for their legal advocacy to win release. Compl. ¶¶ 38, 55. Plaintiffs further alleged that Sheriff Gusman had a voluntary policy and practice of submitting to ICE hold requests, resulting in extended and unlawful detention of Plaintiffs and others. Compl. ¶¶ 16–18, 61–68. Plaintiffs brought constitutional and state law claims arising from this overdetention, Compl. ¶¶ 70–85, and sought damages, attorney

---

[3] The original defendant in this case was Sheriff Marlin N. Gusman in his official capacity as sheriff of the Orleans Parish Sheriff Office. Sheriff Gusman's term ended on May 1, 2022. Sheriff Susan Hutson was elected on December 11, 2021 and sworn into office on May 2, 2022.

[4] ICE hold requests are based on "mere suspicion" of a civil immigration violation, often based on racial profiling, and are "a request—not a requirement—that a local official hold an individual for up to 48 hours (excluding weekends and holidays)." Dkt. 1 ¶¶ 19–20.

fees, declaratory judgment that the overdetention policy was unconstitutional, and other just and proper relief, Compl. ¶ 85(A)–(F).

Plaintiffs and Defendant vigorously litigated these claims for over two years in anticipation of trial, including heavily contested discovery for over a year. Throughout the litigation, Plaintiffs and Defendant explored the possibility of settlement, with significant support from the Court. Approximately one month before the scheduled bench trial, the parties reached a proposed agreement and requested that the Court enter a consent judgment retaining jurisdiction over enforcement of part of the agreement. Dkt. 94. After further discussions with the Court, the parties submitted an amended proposed settlement agreement, Dkt. 95-2, and asked the court to again enter a consent judgment, Dkt. 95. The revised settlement agreement introduced a required mediation process for any dispute between the parties before any dispute could be brought to the Court and also narrowed the scope of who could initiate the enforcement proceedings. *Compare* Dkt. 95-2 ¶ 9 ("The Parties agree that any dispute related to this Consent Judgment be submitted to the following mediation process … before being brought to the Court …") *with* Dkt. 94-2 ¶ 10 (permitting "Proceedings to enforce the Policy" to "be initiated by any person adversely affected by … a violation of the Policy").

The Court reviewed and approved the consent judgment on August 9, 2013, Dkt. 96, which incorporated by reference both the revised settlement agreement, Dkt. 96-1, and the OPSO policy on ICE procedures, Dkt. 96-2. Therefore, the Court's order required Defendant Sheriff Gusman to adopt and implement the OPSO policy on ICE procedures, Dkt. 96.

This OPSO policy governs how OPSO cooperates with ICE. Dkt. 96-2. The policy requires that OPSO "shall decline all voluntary ICE detainer requests" unless the person is charged with certain serious crimes. Dkt. 96-2 ¶ 2. The policy does not govern "ICE criminal warrants" or "any

3

court order for continued detention," which are not considered voluntary ICE detainer requests.[5] Dkt. 96-2 ¶ 1. The policy directs that OPSO officials shall not initiate any immigration status investigation into people it detains and shall not "affirmatively provide information on an inmate's release date or address to ICE," Dkt. 96-2 ¶ 3.[6] The policy also states that OPSO must require ICE officials to notify an inmate's attorney and allow them to be present for any interview pertaining to an ICE criminal investigation. Dkt. 96-2 ¶ 4.[7] This matter has been fully resolved since the entry of the consent judgment almost twelve years ago.

In 2024, the Louisiana Legislature considered and eventually passed an amended version of S.B. 208, which the Louisiana Governor signed into law on May 28, 2024. As the legislature was debating the bill, its sponsors repeatedly assured legislators that the bill did not conflict with the consent decree and did not require local officials to enforce federal immigration law.[8]

## II.   ARGUMENT

### a.   The State Is Not Entitled to Intervention as of Right

---

[5] The State blatantly misrepresents the OPSO policy, with every sentence in its brief describing the policy containing significant and obvious errors. As relevant here, the State pulls quotes from different paragraphs of the policy to state, inaccurately, that "OPSO must 'decline' all 'ICE criminal warrants' unless the detainee is being prosecuted with murder, rape, kidnapping, treason, or armed robbery." Intervention Br. at 1.

[6] The State also falsely describes the policy as forbidding OPSO from providing immigration status information to ICE, Intervention Br. at 1–2, when the policy specifically restricts only the sharing of release date or address information. Dkt. 96-2.

[7] The State further fabricates out of thin air that the policy "requires OPSO to find legal counsel— paid on taxpayer dime—for those that ICE does interview," Intervention Br. at 2, requirements that are nowhere mentioned in this one page policy document.

[8] For example, when asked during debate if S.B. 208 applied to OPSO's consent decree, Representative Jacob Landry, one of S.B. 208's main sponsors, responded that it did not. *See* Louisiana House of Representatives, Archived Video, May 2024, at 2:27, https://house.louisiana.gov/H_Video/VideoArchivePlayer?v=house/2024/may/0520_24_24R S_Day36.

"A party seeking to intervene as of right must satisfy four requirements: (1) [t]he application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit." *Sierra Club v. Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994). If a party seeking to intervene fails to meet any of these requirements, it cannot intervene as a matter of right. *Kneeland v. National Collegiate Athletic Ass'n*, 806 F.2d 1285, 1287 (5th Cir. 1987), *cert denied* 484 U.S. 817 (1987). Here, the State cannot meet all the preconditions to intervene as of right. Therefore, the State's motion to intervene as of right must be denied.

### i. The State lacks a "direct, substantial, and legally protectable" interest.

Rule 24(a) provides "that the applicant must have an interest relating to the property or transaction which is the subject of the action." Fed. R. Civ. P. 24(a)(2). To satisfy this "interest" requirement, the Fifth Circuit requires "a 'direct, substantial, legally protectable interest in the proceedings.'" *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 463 (5th Cir.) (en banc). In the Fifth Circuit, this analysis "turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). Accordingly, "an intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological, economic, or precedential reasons; that would-be intervenor merely prefers one outcome to the other." *Id.* "On the other hand, an interest that is concrete, personalized, and legally protectable is sufficient to support intervention." *Id.* at 658. Finally, it is worth noting that, "an interest is sufficient if it is of the type that the law deems worthy

of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Id.* at 659.

The State claims that its interest in this case is the defense of Louisiana law. Dkt. 112-1 (Intervention Br.) at 2-5. However, there is no state law being challenged here, neither now, nor a dozen years ago when this suit settled, nor when it was filed in 2011. Thus, the State's reliance on *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267 (2022) is misplaced. The Court there recognized nothing more than that the federal courts should be careful, when appropriate within the Federal Rules of Civil Procedure, to allow states to defend their own laws when they are *challenged* in federal courts. *Id.* at 277. That is not the situation here. For the same reasons, the State errs in relying on *Callais v. Landry*, No. 3:24-CV-00122-DCJ-CES-RRS, 2024 WL 1237058 (W.D. La. Feb. 26, 2024) and *Aubin v. Columbia Cas. Co.*, No. CV 16-290-BAJ-EWD, 2017 WL 1416814 (M.D. La. Apr. 19, 2017). *Callais* was a challenge to Louisiana's electoral map, and *Aubin* challenged La. R.S. 14:122, Louisiana's Public Intimidation and Retaliation statute. 2024 WL 1237058, at *4; 2017 WL 1416814, at *2. The State's interest here is vastly different than it was in in *Callais* and *Aubin*, where it sought to fend off legal challenges to Louisiana law, and different too from that of the Commonwealth of Kentucky in *Cameron*, whose abortion law was being challenged constitutionally. 595 U.S. at 277. Here, no Louisiana law is being or has been challenged; there is nothing for the State to defend.

Instead, the State brazenly seeks to insert itself in a nearly dozen-year-old court-approved settlement between the parties, not to defend Louisiana law, but as a backdoor method of trying to enforce the Attorney General's interpretation of a particular Louisiana statute, S.B. 208 (codified at La. R.S. §§ 33:81-85). In fact, any concern the State has is limited to the detention policy the

parties agreed to in 2013 as part of the consent judgment resolving this case.[9] The State specifically

singles out that policy as being at odds with its interpretation of the requirements of S.B. 208,

Intervention Br. at 1-2, and is seeking to intervene only because neither party has so far sought "to

terminate or dissolve the consent decree so that OPSO may come into compliance with state law."

*Id.* at 2.

    This interest in eliminating the detention policy does not support intervention, however.

With its intervention, the State seeks to unravel the parties' settlement agreement and consent

judgment. But, eliminating the settlement agreement and consent judgement would not necessarily

also eliminate the OPSO detention policy. Significantly, the State does not also seek an order from

this Court requiring OPSO to revise or rescind the OPSO detention policy. Under La R.S. § 33:85,

that would require an action in Louisiana's Nineteenth Judicial District Court in Baton Rouge, but

---

[9] Any interest the State may now claim in the administration of the Prison Litigation Reform Act ("PLRA") is absolutely untimely. This case began in 2011 and was resolved in 2013, and the State has never sought to intervene or otherwise insert itself in this litigation, either before, during, or, until now, after settlement negotiations. To do so now, arguing an interest in the administration of the PLRA – when no party or other governmental entity including the State and the federal Department of Justice has ever as much as raised the PLRA regarding this case or the settlement agreement that resolved it – is inappropriate and untimely. Further, Plaintiffs object to consideration of this case under the PLRA. Plaintiffs do not concede that anything in this case, including but not limited to the settlement agreement and consent judgment, is subject to the PLRA and seek an opportunity to fully brief the various PLRA issues at the appropriate time.
The State cites *Castillo v. Cameron County*, 238 F.3d 339 (5th Cir. 2001) and *Ruiz v. Estelle*, 161 F.3d 814, 816 (5th Cir. 1998) in support of its apparent argument that the PLRA provides it a right to intervene. Intervention Br. at 6. The PLRA confers standing on government entities to intervene in cases in which a court issues a "prisoner release order." 18 U.S.C. § 3626(a)(3)(F). A prisoner release order is an order "that has the purpose or effect of reducing or limiting the prison population, or that directs the release from or nonadmission of prisoners to a prison." 18 U.S.C. § 3626(g)(4). *Castillo* does not involve intervention at all. *Ruiz* is inapplicable here because the consent judgment in that case placed a specific numerical limit on a prison system's population. 161 F.3d at 827 *abrogated on other grounds by Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433 (2017). The present consent judgment, however, governs the relationship between OPSO and ICE. Whether a detainee is arrested by ICE after their term of detention ends does not have any effect on OPP's population. The detainee would either be released to ICE or to the street. As such, the PLRA does not confer standing or even support for the State's intervention in this case.

the Attorney General has not pursued any such action. No court, including that one, has determined that the OPSO detention policy is at odds with S.B. 208. Indeed, S.B. 208's author stated that it would not impact existing consent judgments, such as that in this case.[10] Nevertheless, the Attorney General has decided that the detention policy violates S.B. 208 and is trying to intervene to "terminate or dissolve" the consent judgment in order to force OPSO to accede to its interpretation. Intervention Br. at 2.

But, the State puts the cart before the horse. Even if it were certain that the OPSO detention policy would have to be revised in order to comply with S.B. 208, there is no need to "terminate or dissolve" the consent judgment in order to do so. *Id.* Rather, the consent judgment provides a mediation process to resolve disputes, Dkt. 96 ¶ 9, and the settlement agreement explicitly contemplates changes in state law, Dkt. 96-1 ¶ 4. Undertaking that process could very easily resolve any concern the Attorney General has.

In light of the multiple available legal mechanisms and processes, provided both by Louisiana law and the actual consent judgment in this case, it is clear that whatever enforcement interest the State may have in revising OPSO's detention policy is too remote and speculative at this time to form the basis for intervention as of right under Rule 24(a). *See Ross v. Marshall*, 456 F.3d 442, 443 (5th Cir. 2006) ("The interest required to intervene as of right is a 'direct' interest. By definition, an interest is not direct when it is contingent on the outcome of a subsequent

---

[10] *See* Bobbi-Jeanne Misick, "Immigrant advocates worry 'sanctuary city' bill will create mistrust, violate federal mandates" *Louisiana Illuminator* (Apr. 12, 2024), https://lailluminator.com/2024/04/12/sanctuary-city/ ("Miguez also said the bill does not conflict with any federal court mandates."); Bobbi-Jeanne Misick, "OPSO sticks with immigration policy despite new 'sanctuary' ban" *Verite News* (June 18, 2024), https://veritenews.org/2024/06/18/opso-sticks-with-immigration-policy-despite-new-sanctuary-ban/ ("[L]awmakers backing the bill have said they're not trying to interfere with the federally mandated policies in Orleans Parish. So OPSO is sticking with its current policy and taking lawmakers "for their word," said Will Harrell, who oversees the agency's policy directives.").

lawsuit.") (internal citations omitted). The State here does not have a "a real, concrete stake" in the outcome of this litigation. *Texas*, 805 F.3d at 661. It did not at the time the litigation commenced, in 2011, and it does not now. The State cannot fulfill the requirements of Rule 24(a)(2) and the Court should therefore deny intervention as of right.

### ii. The State Has Not Demonstrated Impairment of Impediment

Even assuming that the State has sufficient interest in this litigation, it has not demonstrated that its interest would lie unprotected absent intervention. To prevail, the proposed intervenor must be "so situated that the disposition of the action may as a practical matter impair or impede his ability to protect" their interest. *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 825 (5th Cir. 1967). A motion to intervene as a matter of right is properly denied if the movant has not shown "practical harm if the party is absent." *Id*. at 826.

To demonstrate practical harm, the proposed intervenor must show that the decision in the case in which they seek to intervene will "in all likelihood" prevent them from seeking relief in the future. *Id*. at 829. A "theoretical possibility cannot constitute the requisite practical impairment." *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 414 (5th Cir. 1991). As such, the key test is whether there are "remedies now and later available to the proposed intervenors." *United States v. Louisiana*, 90 F.R.D. 358, 363 (E.D. La. 1981), *aff'd*, 669 F.2d 314 (5th Cir. 1982). Courts focus their inquiry on "the potential effects of stare decisis… of prospective inability to obtain in personam jurisdiction over a party to the action in which intervention is sought…or of the absence of an alternative forum." *United States v. Jackson*, 519 F.2d 1147, 1151 (5th Cir. 1975).

By their nature, consent judgments and settlement agreements do not bind third parties in future litigation. *Jones v. Caddo Par. Sch. Bd.,* 704 F.2d 206, 217 (5th Cir. 1983), *on reh'g,* 735 F.2d 923 (5th Cir. 1984). As the Fifth Circuit explained, "courts fully understand that such decrees

do not purport to be definitive statements of the parties' legal rights and will accord them little or no weight in the determination of the rights of persons not party to them." *Jackson*, 519 F.2d at 1152. Therefore, a consent judgment's impairment of a proposed intervenor's alternative remedies as a result of "*stare decisis* should be minor." *Id*. Courts afford *stare decisis* arguments less weight still where the judgment at issue requires the parties to comply with "all applicable federal, state or local laws and regulations." *Tex. E. Transmission Corp.*, 923 F.2d at 414.

In general, "[i]ntervention after entry of a consent decree is reserved for exceptional cases." *Jones*, 735 F.2d at 935. Any interest in intervening into a settled consent judgment should be weighed against the interest of the "public in the speedy and economical resolution of legal controversies." *Jackson*, 519 F.2d at 1151. Specifically, the Fifth Circuit has warned that allowing any nonparty with an interest to intervene in consent judgments would cause significant practical difficulties in negotiating those in the first place. *See Jones*, 704 F.2d at 221.

In addition, "[i]ntervention generally is not appropriate where the applicant can protect its interests and or recover on its claim through some other means." *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 526 (5th Cir. 1994). For example, this Court has found that a proposed intervenor did not demonstrate impairment or impediment where they had "alternative means" of protecting their rights such as "filing of an independent lawsuit." *Louisiana*, 90 F.R.D at 363. Where possible, proposed intervenors impacted by litigation should assert their claims "in a separate suit that is tailored to their specific needs and issues rather than piling onto" existing cases. *Gen. Land Off. of State of Texas v. Biden,* No. 7:21-CV-00272, 2024 WL 2753253, at *3 (S.D. Tex. May 28, 2024). Importantly, a proposed intervenor is not impaired or impeded where they have an "alternative means" such as a "state-law action" with which to seek vindication. *St. Bernard Par. v. Lafarge N. Am., Inc.,* 914 F.3d 969, 975 (5th Cir. 2019).

Courts may also consider whether the proposed intervenor's claims of impediment or impairment are premature. Motions to intervene may be premature where the parties have not yet announced their opposition to the relief that the proposed intervenor seeks. *See Texas v. Dep't of Homeland Sec'y*, No. 6:24-CV-00306, 2024 WL 4039580, at *4 (E.D. Tex. Sept. 3, 2024), *aff'd,* No. 24-40571, 2024 WL 4404421 (5th Cir. Oct. 4, 2024). Similarly, where a proposed intervenor can make its "views on the proper resolution" of a case to the parties, it should do so. *Louisiana*, 90 F.R.D. at 363. A proposed intervenor may renew their motion once it becomes clear that the parties have failed to protect their interest. *Id*.

Practical disadvantages in subsequent outside litigation are insufficient to demonstrate that impairment if the proposed intervenor may seek relief in the outside forum. *Texas E. Transmission Corp.*, 923 F.2d at 415; *see also* 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1908.2 (3d ed. 2008) ("[T]he practical disadvantage of filing a separate suit and perhaps duplicating some of the efforts in the ongoing action are not sufficient to meet the criteria of the rule."). The Fifth Circuit's decision in *Tex. E. Transmission Corp.* is particularly instructive. In that case, Pennsylvania sought intervention to protect its interest in enforcing its state environmental laws and alleged that a consent decree between the two parties to the case impeded it from doing so.*,* 923 F.2d at 415. The state argued that the consent decree in that case could disadvantage it in subsequent litigation. *Id*. The Fifth Circuit rejected this argument, finding that the "possibility that Pennsylvania might have to respond to a questionable argument in a subsequent action initiated by Pennsylvania is not a sufficiently practical impairment of Pennsylvania's interest in protecting its environment and its citizens to warrant intervention under Rule 24(a)(2)." *Id*.

11

The State in this case has not demonstrated that it lacks the ability to protect its interest. The State argues that "[f]or converging reasons, disposition of this case will impair the State of Louisiana's ability to protect its interests—namely, the enforcement of its duly enacted laws—and it will impair and impede the Attorney General from carrying out her constitutional and statutory duties to defend and enforce the laws of the State of Louisiana." Intervention Br. at 6. However, the State does not explain what those "converging reasons" are. It may well be the case that the consent judgment somehow impairs the State's interest in seeing state law applied throughout the state. However, the State does not explain why it requires intervention in this case to do so.

The State offers no explanation concerning the other means at its disposal. For example, the State does not make any effort to explain why the consent judgment would have any *stare decisis* effect on any of its future litigation. Indeed, as explained above, consent judgments generally have no preclusive effect on future proceedings. This consent judgment states that the agreement "shall not be construed as an implied admission of misconduct, responsibility, liability of any Party" and that nothing in the consent judgment "shall preclude any person not bound by this Agreement from filing a separate, original action to vindicate alleged rights that are otherwise addressed in this Agreement." Dkt. 96-1 ¶ 15. Nor does the State explain whether any other court would lack in personam jurisdiction over OPSO. The State does not detail any exceptional circumstances that warrant a departure from the general rule against intervention into settled consent judgments.

In addition, the State has not detailed any efforts to convince OPSO to enter into the dispute resolution process outlined in the consent judgment. The consent judgment states that OPSO's immigration detainer policy has permanent effect "absent a change in federal or state law applicable to immigration detainers." Dkt. 96 ¶ 4. The parties agreed that the Court has jurisdiction to "take any action necessary or appropriate for the Agreement's enforcement, execution,

modification, or adjudication of disputes." Dkt. 96-1 ¶ 16. Either party may seek such a modification. *Id*. In approving the consent judgment, the Court ordered that "any dispute related to this Consent Judgment be submitted to mediation pursuant to Paragraph 8 and 9 of the Settlement Agreement." Dkt. 96 ¶ 9. In Paragraph 8, the Parties agreed that "the Court retains jurisdiction over this action in order to enforce Paragraph 4 of the Consent Judgment" and to "resolve any disputes regarding the implementation and enforcement of this Consent Judgment." Dkt. 96-1 ¶ 8. Paragraph 9 sets out the mediation process and timeline. *Id*. ¶ 9. If the parties prove unable to reach an agreement as to the dispute, they may seek Court intervention only after mediation. *Id*. The consent judgement also requires that if any agreement provision becomes invalid or unenforceable, the parties "shall then endeavor to replace the invalid or unenforceable portion by a clause which is closest to the contents of the invalid or unenforceable portion." *Id*. ¶ 21.

As such, the consent judgment contemplates a process by which the parties can modify OPSO policies in response to changes in state law. The State presents no evidence of any attempts to convince the parties to engage in that process. It details no harm that would befall the State if the parties entered into mediation to explore if S.B. 208 requires modification of its terms.    Most importantly, S.B. 208 contains the alternative means by which the State may protect its interest. The statute provides for a section on enforcement, which states that the "[a]ttorney general, in consultation with the governor, may file suit against a local governmental entity or local law enforcement agency in the Nineteenth Judicial District for declaratory or injunctive relief for a violation of this Part." La. Rev. Stat. Ann. § 33:85(A). The statute provides that the state court may "enjoin the unlawful sanctuary policy" upon a finding that a local law enforcement agency violated S.B. 208.  La. Rev. Stat. Ann. § 33:85(B).

As noted in subsection i, *supra*, the State does not explain how the current consent judgment violates S.B. 208 in its motion. La. Rev. Stat. Ann. § 33:85(A) plainly provides the State the opportunity to do so in state court. Like the proposed intervenor in *St. Bernard Parish,* the State's alternative means to protect its interest lies in "state-law" action. 914 F.3d at 975. Analogous to the proposed intervenor in *Louisiana*, nothing prevents the State here from the "filing of an independent lawsuit." 90 F.R.D at 363. As in *Texas Eastern Transmission Corp.,* the State's interest in enforcing its view of the law does not carry the day in favor of intervention. 923 F.2d at 413–15. Rather, the State must demonstrate that it lacks any practical means other than intervention to seek protection of its interest. The State has not done so here.

### iii.   The State Has Not Demonstrated That OPSO Does Not Adequately Represent its Interests in This Litigation

Though the State must demonstrate that OPSO does not adequately represent its interests in this case, it has failed to do so. At most, the State has shown little more than OPSO's reluctance to move forward on the State's preferred timeline. As such, the State has not demonstrated the adversity of interest necessary to intervene in this case.

Intervention should be denied if "existing parties adequately represent" a movant's interest. Fed. R. Civ. P. 24(a)(2). A proposed intervenor bears "the burden of demonstrating inadequate representation." *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994). The Supreme Court has characterized this burden as "minimal" and found that the requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate." *Id.* (quoting *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972)).

However, Rule 24(a)'s adequacy requirement "cannot be treated as so minimal as to write the requirement completely out of the rule." *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir.1984). The requirement "must have some teeth." *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014). The

14

adequacy requirement "demands that the proposed intervenors' interests actually be 'adverse' to those of the parties now in the litigation." *Louisiana*, 90 F.R.D. at 364. Showings of small differences in objectives are insufficient as "[i]nterests may be different without being adverse." *Id*. (quoting *Peterson v. United State*s, 41 F.R.D. 131, 133 (D.Minn. 1966)).

Additionally, "adversity of interest must be shown in the present proceeding and may not be inferred from the possibility of adversity in some future proceeding." *Bush*, 740 F.2d at 356–57. As such, representation should be deemed adequate where an intervenor does not demonstrate that an existing party would not make all relevant arguments in the litigation. *Id*. at 357–58. Mere tactical differences between the proposed intervenor and party in the conduct of litigation do not rise to the level of inadequate representation. *See Saldano v. Roach*, 363 F.3d 545, 555 (5th Cir. 2004). Nor does the mere possibility that the parties enter into a settlement disagreeable to the proposed intervenor. *See Bush*, 740 F.2d at 358.

Courts should also presume adequate representation when the proposed intervenor shares the same ultimate objective as a party. *Id*. at 357–58. Representation can be adequate even where the proposed intervenor's and a party's interests differ if they share the same overarching objective in enforcing existing law. *See, e.g.*, *Louisiana*, 90 F.R.D. at 364; *Villas at Parkside Partners v. City of Farmers Branch*, 245 F.R.D. 551, 555 (N.D. Tex. 2007). A proposed intervenor and party may share an ultimate objective even if one party has "a stronger interest in the litigation" than the other. *Kneeland*, 806 F.2d at 1288.  Where the proposed intervenor and party share an ultimate objective, the proposed intervenor must show adversity of interest, collusion, or nonfeasance on the part of the party to overcome the presumption. *Id*.

The State has not met its burden in this case. The State offers only one argument that its interests are adverse to OPSO's here: that OPSO has failed to move to terminate the consent

judgment in the eight months since S.B. 208 became law. *See* 2024 La. Sess. Law Serv. Act 314 (S.B. 208). The State, however, fails to explain why this delay demonstrates an adversity of interest. An eight-month delay is not an adversity of interest. It is simply a delay.

The State's threadbare allegations cite one article in support of its argument that its interests are adverse to that of OPSO.[11] Dkt. 112 at 5. The FOX8 article discusses ICE's efforts to vacate the consent judgment in this case.[12] The article then explains that OPSO's Sheriff, Susan Hutson, stated that "she will continue communications with ICE on the issue."[13] The article also contains two other telling quotes from Sheriff Hutson: "I'm a lawyer. We're going **to stick to the law** and the court order, and that's what we're going to do" and "I cannot do ICE's work. We have too many things we need to do."[14] (emphasis added). Despite the article's headline, OPSO does not state that it will disregard SB 208.  For the State's part, Louisiana's Attorney General commented concerning the instant consent judgment, "I don't need to be adverse to the sheriff. She could agree with me that this needs to be resolved."[15]

That OPSO has yet to seek modification of the twelve-year-old consent judgment is also understandable in light of statements from S.B. 208's sponsors and supporters during the legislative debate that led to its passage.[16]  For example, when asked during debate if S.B. 208

---

[11] The State also cites a CBS News article. Dkt. 112 at 2. However, the article states that the "Orleans Parish Sheriff's Office declined an interview with CBS News." *See* Kati Weis, *As ICE ramps up immigration sweeps, New Orleans' sanctuary city status could be put to the test*, CBS Evening News (Feb. 8, 2025), t.ly/Q-jjB.

[12] Chris Joseph, *"I cannot do ICE's work;" Orleans Sheriff vows to follow settlement agreement over holding ICE targets*, Fox 8 (Dec. 30, 2024), t.ly/EWekU.

[13] *Id.*

[14] *Id*.

[15] Jonah Gillmore, *Louisiana attorney general filing lawsuit against Orleans Parish sheriff over immigration policies*, WDSU 6 (Feb. 13, 2025), https://www.wdsu.com/article/louisiana-attorney-general-orleans-sheriff-immigration-policy-lawsuit/63788869.

[16] *See* Louisiana State Senate Archived Video, March 2023, at 53, https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2024/03/032724SCHAMB.

applied to OPSO's consent decree, Representative Jacob Landry, one of S.B. 208's main sponsors, responded that it did not.[17] Any delay in seeking modification of the consent judgement on OPSO's part may be attributed to the interpretations by S.B. 208's sponsors that it would not affect the consent judgment. As such, any arguments that the State and OPSO's interest are adverse in this case are premature.

The State does argue that "[s]tates and state officials are often intervenors in PLRA suits to defend their sovereign prerogatives and to move to terminate prospective relief." Dkt. 112 at 6. The State makes no argument as to why OPSO lacks the will to defend the State's possible interests in any potential mediation or vacatur proceedings. Nor does it explain how the ultimate conclusion of those proceedings could result in OPSO abandoning the State's interests in favor of its own. Additionally, the State has failed to identify what arguments of value it may bring to this case. It cites no special expertise in the present consent judgement, the purported constitutional violations that gave rise to the judgment, or enforcement of Louisiana's new law.

The State has the same ultimate objective as OPSO in this case: enforcing the state law within the confines of the United States Constitution. The Attorney General, by her own description, "is dedicated to defending the rule of law and protecting our inherent sovereignty as citizens of Louisiana…[and took] an oath to protect and uphold the Constitutional rights of every Louisiana citizen."[18] Similarly, OPSO describes its mission as providing "public safety and service to the citizens of Orleans Parish" and "the highest level of service and security to the court

---

[17] *See* Louisiana House of Representatives, Archived Video, May 2024, at 2:27, https://house.louisiana.gov/H_Video/VideoArchivePlayer?v=house/2024/may/0520_24_24RS_Day36.
[18] La. Dep't of Justice, Attorney General Liz Murrill (accessed Mar. 26, 2025), https://www.ag.state.la.us/About.

systems, the execution of court mandates, and the protection of individuals' rights and freedoms."[19] The State and OPSO have regularly collaborated on litigating cases concerning state law and Constitutional rights. *See, e.g., New Orleans*, 2022 WL 4465534, at *1; *Diodene v. Gusman*, No. CV 21-491, 2024 WL 1550369 (E.D. La. Mar. 20, 2024); *Ruffin v. Orleans Par. Sheriff's Off.*, No. CV 22-2573, 2024 WL 3011052 (E.D. La. June 14, 2024).

While the State does not identify specifically where its interests diverge from OPSO's in this case, both offices seem to have the identical ultimate objective of enforcing both state law and the U.S. Constitution. Given this unity of objective, the State must demonstrate adversity of interest, collusion, or nonfeasance on OPSO's part. At most, the State has shown its own dissatisfaction with the terms of the consent judgement and with the pace with which OPSO has sought to modify the judgment. But a tactical disagreement is not an adversity of interest. And a delay is not nonfeasance. The State has failed to prove inadequate representation in this case.

### b.  The State Is Not Entitled to Permissive Intervention

The State does not meet the requirements for permissive intervention under Rule 24(b) either. "A court possesses the discretion to determine whether to permit permissive intervention and must 'consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Waste Mgmt. of Louisiana, LLC v. River Birch, Inc*., No. 11–2405, 2013 WL 5175620, at *3 (E.D. La. Sept. 13, 2013) (quoting Fed. R. Civ. P. 24(b)(3)); s*ee also Complete Logistical Servs., LLC v. Rulh*, No. 18-3799, 2019 WL 1557965, at *3 (E.D. La. Apr. 10, 2019) ("Permissive intervention is wholly discretionary with the [district] court … even though

---

[19] Orleans Parish Sheriff's Office, About Orleans Parish Sheriff's Office (accessed Mar. 26, 2025), https://www.opso.us/index.php?option=com_content&view=article&id=149&Itemid=268.

there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise

satisfied." (quoting *New Orleans Pub. Serv., Inc.*, 732 F.2d at 471).

In deciding whether to grant or deny permissive intervention, courts in the Fifth Circuit

should consider: (1) whether the intervenor is adequately represented by the existing parties; and

(2) whether intervention is likely to contribute significantly to the development of the underlying

factual issues. *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185,

189 (5th Cir. 1989). Courts must also undergo a two-step analysis: first, they determine whether the

movant's claim or defense and the main action share a common question of law or fact; and

second, they exercise their discretion to decide whether intervention should be allowed. *Rulh*, 2019

WL 1557965, at *3.

Permissive intervention should be denied here because, as explained above, Defendant

OPSO already adequately represents the States interests, if any, and the original parties would be

prejudiced by the State's attempt to dissolve the longstanding consent decree.[20] *Taylor Commc'ns*

---

[20] OPSO entered the consent judgement in response to Plaintiffs' allegations of unconstitutional and potentially indefinite detention of people subject to ICE detainers. The State does not explain how it would plan to safeguard the liberty rights of those detained by OPSO in the event of the consent judgment's termination. Both Plaintiffs and Defendant would be harmed by the increase in jail population that would inevitably result from the termination of the consent judgment. OPSO is a defendant in *Jones v. Gusman*, No. 2:12-cv-00859 (E.D. La. 2012). In that case, the plaintiffs challenged alleged unconstitutional conditions of confinement within the Orleans Parish jail. Order granting in part Consent Judgement at 1, *Jones*, No. 2:12-cv-00859 (E.D. La. Dec. 11, 2012), ECF No. 101-3. As a result, OPSO entered into a consent judgment, which requires that it must ensure that people it detains are provided with constitutionally adequate safety and medical and mental health care. *Id.* at 5-31. OPSO continues to operate the Orleans Parish jail under the terms of this consent judgment and independent monitors regularly assess OPSO's compliance. Report No. 20 of the Independent Monitors, *Jones*, No. 2:12-cv-00859 (E.D. La. Oct. 29, 2024), ECF No. 1721. The independent monitors, in their most recent report, identified staffing shortages in proportion to the detained population at the jail as a main cause of noncompliant conditions of confinement at the jail. *Id.* at 7, 11, 14, 25. Allowing intervention at this stage risks forcing OPSO to divert resources towards ICE collaboration. The risk of exacerbating constitutional violations in service to the Attorney General's interpretation of S.B. 208 counsel against allowing permissive intervention in this case.

*Grp., Inc. v. Sw. Bell Tel. Co.*, 172 F.3d 385 (5th Cir. 1999) ("In exercising its discretion [under Rule 24(b)], the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.") (quoting Fed. R. Civ. P. 24(b)). Allowing the State to intervene here will no doubt delay and prejudice the rights of the original parties.

Moreover, denying permissive intervention will not harm the State, as it does not have a protectable interest at stake in this litigation, and any conceivable interest it does have is already adequately represented by Defendant OPSO. "When a proposed intervenor possesses the same ultimate objectives as an existing litigant, the intervenor's interests are presumed to be adequately represented absent a showing of adversity of interest, collusion, or nonfeasance." *Clements*, 884 F.2d at 189. Speculation about inadequacy is not sufficient; something more must be presented. *Id*. The State fails to offer a convincing explanation as to why Defendant OPSO and its counsel are now inadequate representatives. Nor does the State articulate how its participation would contribute meaningfully to a fair and efficient resolution of this matter, even in light of the newly enacted S.B. 208. This weighs strongly against permissive intervention.

Indeed, even when the requirements of Rule 24(b) are satisfied, courts retain broad discretion to deny intervention. *S.E.C. v. Stanford Int'l Bank, Ltd.*, 429 F. App'x 379, 382 (5th Cir. 2011) (denying motion to intervene where the court found it would cause undue delay). Even assuming the State could meet the threshold requirements for permissive intervention—which it cannot—the Court should nevertheless exercise its discretion to deny the motion in light of the unnecessary complexity and burden that the State's participation would impose on both the proceedings and the parties.

**c. The State Has Not Effectuated Proper Service of the Motion to Intervene**

The State's motion to intervene, filed nearly twelve years after this case was closed with no further litigation, was, further, never appropriately served on any party. Rule 5 requires that "a written motion" that is not ex parte "must be served on every party." Fed. R. Civ. P. 5(a). Service "must be made on the attorney" for a represented party through specified means, which include "sending it to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing … but it is not effective if the filer or sender learns that it did not reach the person to be served." Fed. R. Civ. P. 5(b). While no certificate of service is required for filings through the court's electronic-filing system, "a certificate of service must be filed" if served by other means, either with the filing or "within a reasonable time after service." Fed. R. Civ. P. 5(d).[21]

It appears that the State alerted media to their legal filing but did not properly serve either Defendant Sheriff Hutson or Plaintiffs. Counsel for the State submitted its motion, on three separate occasions, through the Court's electronic filing system, with no certificate of service and no indication of any further attempt to inform counsel for the present parties.[22] Dkt. 110, 111, 112. Undersigned counsel were alerted to the State's taking legal action only when a colleague shared a news article with local counsel Mary Yanik on February 13, 2025. The initial version of this article was entitled "Louisiana attorney general files lawsuit against Orleans Parish sheriff," which

---

[21] Local Rule 5.4 requires that a certificate of service should be included in any filing that is served by means other than the court's electronic filing system.

[22] The State's motion claims that "Plaintiffs have not responded to the State's request to obtain consent for the filing and granting of them motion." Dkt. 110 at 1. The State nowhere represents how or if they requested consent from the Plaintiffs, and upon information and belief of present counsel, no current or former attorney for Plaintiffs were contacted by the State prior to the filing of this motion. This separately violated the Court's local rules, which require that any proposed intervenor "must attempt to obtain consent for the filing and granting of the motion from all parties having an interest to oppose." Local Rule 7.6.

seemed to indicate that the State had initiated a new action against Sheriff Hutson.[23] The Sheriff's

office responded to the reporter that "OPSO cannot comment on pending litigation, which we have

not received or reviewed." *Id*.

Electronic filing through CM/ECF alone was not adequate service of this motion in a case

that has been terminated for nearly twelve years, with numerous changes of counsel and even a

change in party—because Sheriff Hutson replaced former Sheriff Gusman in May 2022.[24] A single

attorney from the original legal team representing Plaintiffs remains at the same organization, with

the same contact information—Mr. Espiritu —but even he did not receive any electronic or other

notification of the State's filing.  Espiritu Decl. All other counsel listed for Plaintiffs had left their

firms or organizations years before this filing, meaning that their listed contact information is not

accurate, and they received no notification of the filing—a foreseeable development after nearly

twelve years of inactivity in a terminated case.[25] Sadly, one of Plaintiffs' former attorneys, Linton

Joaquin, passed away nearly two years ago.

---

[23] The article was later updated with additional information though still characterizes the State's
actions as "fil[ing] a lawsuit in federal court against the Orleans Parish Sheriff's Office over ice
policies[sic]." Jonah Gilmore, "Louisiana attorney general filing lawsuit against Orleans Parish
sheriff over immigration policies," WDSU (Feb. 13,
2025), https://www.wdsu.com/article/louisiana-attorney-general-orleans-sheriff-immigration-
policy-
lawsuit/63788869#:~:text=NEW%20ORLEANS%20%E2%80%94,Sheriff's%20Office%20over%
20ice%20policies.

[24] Further, at the time of the State's filing, former Sheriff Gusman was listed as the Defendant, with
all enrolled attorneys representing this former elected official rather than his successor, Sheriff
Hutson. Defendant Sheriff Hutson therefore had no enrolled counsel in this matter, and the
electronic filing notices of the State's motion to intervene went only to private attorneys who years
ago had been contracted to represent former Sheriff Gusman, whom Sheriff Hutson challenged and
then unseated in the 2022 election for Orleans Parish Sheriff.

[25] All counsel enrolled for Plaintiffs at the time of the State's filing had resided outside of
Louisiana for years, with some no longer maintaining a litigation practice. In this context, these
attorneys' failure to maintain contact information in a case closed nearly twelve years ago is
foreseeable and reasonable, especially considering that there was no assigned judge on the matter

The Court may deny a motion for failure to comply with Rule 5, both for failure to serve and for failure to include a certificate of service where one is required. Failure to serve is grounds to deny the motion. *LaBranche v. Apple, Inc*., No. 24-234, 2024 WL 3553592, at *1 (E.D. La. July 26, 2024) (denying motion to compel for failure to serve discovery); *Evans v. Port Authority of New York and New Jersey*, 246 F.Supp.2d 343, 344 (S.D.N.Y. 2003) (denying motion for failure to show proof of service). The Court may also order the movant to re-effectuate service. *Holmes v. White*, No.23-1247, 2024 WL 4266732,  at *4 (E.D. La. Sept. 23, 2024); *Dixon v. Tesla Motors, Inc*., No. 1-23-CV-326-RP, 2024 WL 4875291, at *4 (W.D. Tex. Nov. 13, 2024).

"When service of process is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service." *Sys. Signs Supplies v. U.S. Dept. of Justice, Washington, D.C.*, 903 F.2d 1011, 1013 (5th Cir. 1990) (citing authority). Absent such a showing, the State's motion should be denied.

### d.  The State's Participation Should Be Limited to *Amicus Curiae* Only

"Where [proposed intervenor] presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention." *S. Carolina v. N. Carolina*, 558 U.S. 256, 288 (2010) (Roberts, C.J., concurring in judgement in part and dissenting in part) (citation omitted). The State has not established that it is entitled to intervene as of right, and permissive intervention is not warranted, but the State could

---

to adjudicate any motions to substitute counsel after Judge Shushan's retirement. *See* E.D. La. Admin. Proc. For Elec. Case Filings & Unique Procs. & Pracs. For Elec. Filings (Mar. 2015), R. 2 (stating that "Each attorney has a continuing obligation to notify the Court promptly of any changes in address, telephone number, email or other ECF account information."). Further, substituted local counsel Mary Yanik had maintained continuous contact with counsel for Defendant Hutson (as well as her predecessor Sheriff Gusman), which was reasonable and sufficient since the settlement agreement in this case requires mediation between the parties before seeking enforcement before the Court. Dkt. 96-1.

participate in this case as amici curiae—and Plaintiffs will not object to such participation—at appropriate points in the litigation.

"Courts often treat amicus participation as an alternative to intervention." *Bush*, 740 F.2d at 359. In *Bush*, the court of appeals affirmed the district court's decision that the proposed intervenors, an association of Texas counties, failed to overcome the presumption that its interests were adequately represented by an existing defendant which shared the same objectives, thereby stripping the association of entitlement to intervention as of right.  The court of appeals further found that the district court did not abuse its discretion by denying the Texas counties association's application for permissive intervention since its interests were adequately represented by an existing defendant, and especially since the association was already granted amicus curiae status. *Id*. ("We believe that, in a case such as this, the position of amicus, which the Association already possesses, is more appropriate than an intervention with full-party status.").

In the instant case, the State has indicated no reason why participation as amici would not satisfy its limited general interests in this matter, or their desire to "enforce state law." To be sure, the State has attempted to participate as amici in an analogous case seeking termination of a related consent judgment. *See United States v. City of New Orleans*, No. CV 12-1924, 2022 WL 4465534, at *1 (E.D. La. Sept. 26, 2022). For this reason, too, the Court should exercise its discretion to deny intervention and allow the State to participate only with amicus curiae status.

## III.    CONCLUSION

For all these reasons, Plaintiffs respectfully request that the Court deny the State of Louisiana's Motion to Intervene.

DATED April 8, 2025,

Respectfully submitted,


/s/_____
**Mary Yanik**
Louisiana Bar No.: 36973
TULANE LAW CLINICS
6329 Freret Street, Suite 130
New Orleans, LA 70118
Tel.: (620) 341-2653 (cell)
(504) 865-5153 (general office)
myanik@tulane.edu

**Cassandra Charles***
New York Bar No.: 5540133
NATIONAL IMMIGRATION LAW CENTER
PO Box 34573
Washington, DC 20043
Tel.: (213) 674-2814
charles@nilc.org

*Counsel for Plaintiffs Mario Cacho and
Antonio Ocampo*

**Matthew S.Vogel†*****
Louisiana Bar No. 35363
NATIONAL IMMIGRATION
PROJECT OF THE NATIONAL
LAWYERS GUILD
1763 Columbia Rd. NW,
Suite 175 #896645
Washington, DC 20009
Tel.: (504) 569-5650
matt@nipnlg.org

† Not admitted in DC; working remotely
from and admitted in Louisiana only


**Jeremy Jong****
New Jersey Bar No.: 066472014
AL OTRO LADO
634 S Spring St., Suite 908
Los Angeles, CA 90014
Tel.: (504) 475-6728
jeremy@alotrolado.org


*Pro Hac Vice
**Pro Hac Vice pending
***Motion to Enroll As Counsel pending*

25