UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARIO CACHO AND ANTONIO OCAMPO,<br><br>PLAINTIFFS,<br><br>v.<br><br>SHERIFF MARLIN N. GUSMAN, ORLEANS PARISH SHERIFF,<br><br>DEFENDANT. | Civil Action No. 2:11-cv-225<br><br>Judge: Hon. Janis Van Meerveld |

**THE STATE OF LOUISIANA'S REPLY IN SUPPORT OF
ITS MOTION TO INTERVENE**

## INTRODUCTION

The State of Louisiana is entitled to intervene to defend state law and protect its sovereignty. That is well within its right—or at the least with the Court's permission. *See* Fed. R. Civ. P. 24(a) & (b); *see, e.g., Callais v. Landry*, No. 3:24-cv-122, 2024 WL 1237058, at *4 (W.D. La. Feb. 26, 2024); *Harrison v. Jefferson Par. Sch. Bd.*, No. 20-2916, 2021 WL 4268802, at *9 (E.D. La. Mar. 2, 2021); *Aubin v. Columbia Cas. Co.*, No. 16-290, 2017 WL 1416814, at *4 (M.D. La. Apr. 19, 2017); *Nairne v. Ardoin*, No. 22-178, 2022 WL 1559074, at *3 (M.D. La. May 17, 2022). Plaintiffs' opposition only confirms as much.

## ARGUMENT

### I. THE STATE IS ENTITLED TO INTERVENTION AS OF RIGHT UNDER RULE 24(A).

Upon a timely motion, the State may intervene as of right if it (1) has "an interest relating to the property or transaction that is the subject of the action" (2) that is "inadequately represented by the existing parties to the suit," and (3) is "so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest." *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014) (quoting Fed. R. Civ. P. 24(a)(2)) (the elements are "liberally construed" in favor of intervention).[1]

---

[1] No one meaningfully disputes that the State's motion to intervene is timely. *See Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (en banc). In a footnote, Plaintiffs object to what-they-call the timing of the State's "interest in the administration of the Prison Litigation Reform Act" (whatever that may mean). Opp. 7 n.9. That objection says nothing of the motion's timely filing and only that Plaintiffs disagree with the application of the PLRA to this suit—an issue that can and should be "fully brief[ed]" by Plaintiffs. *Id.*

2

**1.** The State of Louisiana plainly has an interest in this case. Long have States had "a legitimate interest in the continued enforceability of [their] own statutes." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 277 (2022) (cleaned up). Few interests are more "'direct, substantial, [and] legally protectable." *Edwards*, 78 F.3d at 1004 (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc)). And that sovereign interest far exceeds "a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Field v. Anadarko Petroleum Corp.*, 35 F.4th 1013, 1018 (5th Cir. 2022). Indeed, in Louisiana, the State Constitution *requires* the Attorney General to vindicate *all* such interests and, in turns, vests her with the constitutional power to "intervene in any civil action" to protect the "rights and interest" of the State and its citizens and to uphold the State's Constitution and laws. La. Const. art. IV., § 8. That "'choice belongs to' the sovereign State." *Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179, 192 (2022). So here.

In this case, Plaintiffs challenged the constitutionality of the State's political subdivision performing a state function, ECF No. 1 ¶¶ 2, 72, their settlement is inextricably intertwined with the enforcement of state law today, *see* La. R.S. 33:81 *et seq.*, and the ongoing existence (or not) of the consent decree turns on whether there has been a change in *state law*, ECF No. 96-1 ¶ 4. That is the stuff of State interests in a case sufficient for intervention as of right. *See Brumfield*, 749 F.3d at 341.

To be sure, *Cameron* concerned a direct challenge to the constitutionality of a state statute. *See* ECF No. 127 ("Opp.") at 6. But Plaintiffs' narrow conception of

3

*Cameron* misses the point. The Supreme Court's decision in *Cameron* (and soon after in *Berger*) concerns a State's right to intervene to protect its "residuary and inviolable sovereignty" at large. 595 U.S. at 277. As a sovereign State, Louisiana has a steep interest in retaining its "power to enact and enforce any laws," *id.*, and its "authority … to structure its executive branch," *id.*, no less than its interest in maintaining its "absolute discretion" over its political subdivisions, *Holt Civic Club v. Tuscaloosa*, 439 U.S. 60, 71 (1978) (citing *Hunter v. Pittsburgh*, 207 U.S. 161, 178 (1907)); *accord Berger*, 597 U.S. 179, 191 ("the separation of government powers has long been recognized as vital to the preservation of liberty, and it is through the power to 'structure ... its government, and the character of those who exercise government authority, [that] a State defines itself as a sovereign'"); *see also* ECF No. 112-3 at 6.

Perhaps recognizing as much, Plaintiffs yield that the State has an "interest in eliminating the detention policy," Opp. 7, yet they do not believe it sufficient unless the State's intervention "would [] necessarily also eliminate the OPSO detention policy," Opp. 8–9. But that quasi-redressability argument is wholly beside the point. "[A]n interest is sufficient if it is of the type that the law deems worthy of protection"—"even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 566 (5th Cir. 2016); *see DeOtte v. Nevada*, 20 F.4th 1055, 1068 (5th Cir. 2021). The State has such an interest.

**2.** The State's sovereign interests are inadequately represented here. *See Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) ("this burden is minimal"). A

4

change in Louisiana law rendered the consent decree null by its own terms months ago, yet neither party has moved to terminate the decree. *See* Chris Joseph, *"I cannot do ICE's work;" Orleans Sheriff vows to follow settlement agreement over holding ICE targets*, Fox 8 (Dec. 30, 2024), t.ly/EWekU. That is especially problematic for the State when the decree imposes forever-style prospective injunctive relief in violation of the Prison Litigation Reform Act. *See* 18 U.S.C. § 3626(b), (e). And the PLRA expressly contemplates an "intervener" to seek "immediate termination" of that sort of relief. *See, e.g.*, *Castillo v. Cameron County*, 238 F.3d 339 (5th Cir. 2001) (state intervening to enforce PLRA's relief provision). The State's sovereign interests are thus contrary to (and, as a result, may not be adequately represented or protected by) the parties' *de facto* acquiescence in the continued existence of the consent decree.

To evade this straightforward analysis, Plaintiffs misapply intervention law and misrepresent the State's interests here in several ways.

*First*, Plaintiffs complain that "the State has not demonstrated the adversity of interest necessary to intervene in this case." Opp. 14. But strict "adversity" is not the test for whether the State's interests are adequately represented here. *See Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994) (sufficient if "representation of his interest 'may be' inadequate"). To bridge that gap, Plaintiffs graft quotes from different contexts applying a different legal standard. In *Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984), for example, the Court discussed the standard for *private parties* intervening as defendants alongside the State. *See* Opp. 15. In *that* context, "[w]hen the party seeking intervention has the same ultimate objective as a party to

5

the suit, a presumption arises that its interests are adequately represented," such that "the petitioner must demonstrate *adversity of interest*, collusion, or nonfeasance." *Id.* (emphasis added). For the same reason, misplaced is Plaintiffs' heavy reliance on *United States v. Louisiana*, 90 F.R.D. 358, 363 (E.D. La. 1981) (quoting *Martin v. Kalvar Corp.*, 411 F.2d 552, 553 (5th Cir. 1969)). That school desegregation case concerns *private* schoolchildren seeking to intervene as plaintiffs alongside the United States. *Id.* at 362.[2]

But that heightened standard has no place where *the State* is the intervener. So says the Supreme Court. While "a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance," "a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." *Berger*, 597 U.S. at 197. And "[a]ny presumption against intervention is *especially* inappropriate when wielded to displace a State's prerogative to select which agents may defend its laws and protect its interests." *Id.* That is because "a State's chosen representatives should be greeted in federal court with respect, not adverse presumptions." *Id.* All the same here.

*Second*, Plaintiffs incorrectly presuppose that OPSO and the State have identical interests in this case. They believe that is so because the Attorney General's website and OPSO's website both allude to overarching missions of "enforcing state

---

[2] Application of that standard in those instances is itself a "doctrinal error"—just one the Court need not weigh into here. *See Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 809 (7th Cir. 2019) (Sykes, J., concurring) (quoting *Wright & Miller* and explaining the doctrinal error" in that heightened burden stemming from *Martin*, 411 F.2d at 553).

6

law within the confines of the United States Constitution." Opp. 17–18. That comparison (however strained) is irrelevant. The question for intervention purposes is confined to *this case*—whether the State's "interest relating to the … transaction that is the subject of the action" is "inadequately represented by the existing parties to the suit." *Brumfield*, 749 F.3d at 341. Rule 24 does not call for a freewheeling judicial balancing of organizational mission statements.

*Third*, Plaintiffs suggest that the State could collaborate with OPSO as it has in other cases. Opp. 18. At the outset, the Attorney General has no involvement in two of the matters Plaintiffs cite. *See Diodene v. Gusman*, No. CV 21-491 (E.D. La.); *Ruffin v. Orleans Par. Sheriff's Off.*, No. CV 22-2573 (E.D. La.).[3] In the other, the Attorney General sought to file an amicus brief in support of the *City of New Orleans* because it had moved to *terminate* the consent decree (consistent with the State's interest in that case). *See United States v. City of New Orleans*, No. CV 12-1924, 2022 WL 4465534, at *3 (E.D. La. Sept. 26, 2022). And that *hurts*, rather than *helps*, Plaintiffs. For the State does collaborate with it political subdivisions, but only when their interests in the case are aligned and, thus, adequately represented. That is yet more evidence that the State's interest is not adequately represented by OPSO here.

**3.** Disposition of this case will impair or impede the State's ability to protect its interests and the Attorney General's carrying out her constitutional and statutory duties. That is so because the consent decree now sits fundamentally at odds with

---

[3] Plaintiffs' confusion perhaps arises from Sheriff Hutson's representation by a "Tracey J. Comeaux"—an employee of OPSO that lists his address on PACER as both "Orleans Parish Sheriff Office" and "Attorney General's Office" at "2800 Perdido St."—where OPSO is located.

7

state law as applicable to immigration detainers. *See* ECF No. 112-3 at 1–2, 5–6. So the State's "interest may be impaired if [it is] denied intervention." *See La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 307 (5th Cir. 2022); *see Field*, 35 F.4th at 1020 (sufficient for intervention "if [the State] cannot intervene, there is a possibility that [its] interest could be impaired or impeded"). Indeed, that "interest … is, as a practical matter, at risk of being lost as this litigation proceeds," as obvious from juxtaposing "the respective motivations of" of the State and the original parties. *Field*, 35 F.4th at 1020. On that score, Plaintiffs seemingly agree. *See* Opp. 12 ("It may well be the case that the consent judgment somehow impairs the State's interest in seeing state law applied throughout the state."). And that is all the State need show to intervene in this matter.

  Plaintiffs again fight the legal standard. On their telling, the State must prove it "lacks any practical means other than intervention to seek protection of its interest." Opp. 14; *see* Opp. 8–9, 12. Not so. Plaintiffs' proposed formulation not only runs roughshod over the Fifth Circuit's most recent intervention decisions in *La Union del Pueblo Entero* and *Field* (and the State deference in *Cameron* and *Berger*), but also is nothing more than a Frankenstein of inapposite case law. For example, Plaintiffs repeatedly draw on the likes of *St. Bernard Parish*, *Caddo Parish School Board*, and *United States v. Louisiana*. *See* Opp. 9–11, 14. But they draw from those cases' analyses of the *timeliness* of an intervention motion (and the possible prejudice to the untimely intervener). *See St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 974 (5th Cir. 2019) ("Timeliness was the only element the district court decided

8

and is the only one disputed here."); *Jones v. Caddo Par. Sch. Bd.*, 735 F.2d 923, 933 (5th Cir. 1984) (en banc) (no "abuse its discretion in determining that Ms. Phillips' motion was untimely"); *see also Louisiana*, 90 F.R.D. at 363–65 ("applicants may not currently be said to be acting in a timely fashion"). Those cases are, of course, irrelevant to evaluating whether, if denied intervention, the State's interest may be practically impaired.

In a similar vein, Plaintiffs also suggest that, to intervene, the State must *prove* "potential effects of stare decisis," "prospective inability to obtain in personam jurisdiction over a party to the action in which intervention is sought," and "the absence of an alternative forum." *See* Opp. 9–10, 12. That confuses the sufficient as the necessary. In the wake of "the rigidity … of [Rule 24's] pre-1966 counterpart," the Fifth Circuit had acknowledged that proof of *any* of these were a means to intervention as of right. *United States v. City of Jackson*, 519 F.2d 1147, 1151 (5th Cir. 1975) (citing *Atlantis Development Corp. v. United States*, 379 F.2d 818 (5 Cir. 1967)). But that list was not exhaustive at the time—and especially not now. *Field* and *La Union del Pueblo Entero* prove as much.

In the end, none of Plaintiffs' objections change anything about the intervention-as-of-right calculus for *this case*: (1) the State has distinct sovereignty interests in this case, (2) those sovereign interests are not adequately represented by Plaintiffs or OPSO, and (3) the disposition of this case could impair those interests. That is all the Court need say to grant intervention as of right.

## II. ALTERNATIVELY, THE STATE IS ENTITLED TO PERMISSIVE INTERVENTION UNDER RULE 24(B).

In the alternative, the court should grant permissive intervention, for "a claim or defense" of the Attorney General "shares with the main action a common question of law or fact," and the parties face no undue delay or prejudice. Fed. R. Civ. P. 24(b)(1)(B), 24(b)(3). To this, Plaintiffs' only unique retort is the possibility of prejudice. In their view, the State's intervention would prejudice Plaintiffs because (1) the State's "plan to safeguard the liberty right of those detained by OPSO" is unclear and (2) it "risks forcing OPSO to divert resources towards ICE collaboration" and away from another consent judgment. Opp. 19 & n.20. Those are puzzling, not least because Plaintiffs are not OPSO detainees—and have not been for a decade. Nor are Plaintiffs a party to the *Jones* judgment. The reality is that no tangible prejudice befalls Mr. Cacho and Mr. Ocampo specifically from the State's intervention here.

## III. PLAINTIFFS' SERVICE OBJECTION IS MERITLESS.

As a last ditch, Plaintiffs complain that they were insufficiently served with the State's intervention motion under Rule 5. *See* Opp. 20–23. That is wrong. As they acknowledge, Opp. 20, "filing it with the court's electronic-filing system" with "[n]o certificate of service" is sufficient service. Fed. R. Civ. P. 5(b)(2)(E) & (d)(1)(B). That is what the State did. *See* ECF No. 112. Contrary to Plaintiffs' assertions (at 22–24), it is not the State's burden to identify Plaintiffs' supposedly new counsel in a case in which they agreed "the Court retains jurisdiction over this action." ECF No. 96 ¶ 8.

## CONCLUSION

The Court should grant the State's motion to intervene.

`
`

Dated: April 11, 2025

Respectfully submitted,

**ELIZABETH B. MURRILL**
**Attorney General of Louisiana**

 /s/ *Zachary Faircloth*
J. BENJAMIN AGUIÑAGA*
  *Solicitor General*
ZACHARY FAIRCLOTH (La #39875)
  *Principal Deputy Solicitor General*
OFFICE OF THE LOUISIANA ATTORNEY GENERAL
1885 North Third Street
Baton Rouge, LA 70802
Telephone:  (225) 326-6705
Facsimile:   (225) 326-6795
aguinagab@ag.louisiana.gov
fairclothz@ag.louisiana.gov

*Counsel for the State of Louisiana*

**\*** *pro hac vice forthcoming*