IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARIO CACHO AND ANTONIO OCAMPO

          Plaintiffs,

v.

SHERIFF MARLIN N. GUSMAN, ORLEANS PARISH SHERIFF;

          Defendant.

Case No.: 2:11-cv-225
HON. JANIS VAN MEERVELD

DIVISION: (1)

**PLAINTIFFS' BRIEF IN RESPONSE TO
SUPPLEMENTAL STATEMENT OF INTERESTS OF THE UNITED STATES**

Plaintiffs Mario Cacho and Antonio Ocampo (collectively, "Plaintiffs") respectfully submit this brief in response to the Supplemental Statement of Interests of the United States ("Statement"). Dkt. 146. The Statement does not merit consideration. First, the Statement is unuseful and unnecessary. It does not substantively address any intervention standard, least of all the requirement that the movant show practical impairment of its ability to seek redress concerning a legally protectable interest. In addition, the Statement does not address new issues not already covered by existing briefing and the facts therein are unreliable and provide an incomplete picture of the cases described. Second, the Statement is untimely, as the United States ("federal government") filed it months after any applicable briefing deadline. As such, the Court should decline to consider the Statement and deny intervention.

**FACTS AND PROCEDURAL HISTORY**

On February 14, 2025, the State moved to intervene in a twelve-year-old consent judgment agreed to by Plaintiffs and Defendant Orleans Parish Sheriff's Office ("OPSO"). Dkt. 112. The State argued that it warranted intervention pursuant to Fed. R. Civ. P. 24. *Id*. at 2. On February 25, 2025, the Court ordered that the parties file any opposition by April 8, 2025 and that the State file its reply by April 11, 2025. Dkt. 123. Plaintiffs timely opposed the State's intervention motion, arguing that the State has not demonstrated the interest, impairment, or inadequate representation required for intervention. Dkt. 127 at 5-18. The State replied on April 11, 2025. Dkt. 132.

On April 23, 2025, the federal government filed its first Statement of Interests, arguing that its interest is in the termination of the consent judgment in the instant case. Dkt. 134 at 22. On April 30, 2025, the Court held its motion hearing concerning the State's intervention motion.

1

Dkt. 145. Department of Justice attorney Stephanie Groff attended the hearing by phone. On July 23, three months later, the federal government filed its Statement. Dkt. 146.

On September 30, 2025, this Court solicited briefs "addressing the impact of the submission of the United States on the 'practical impairment' prong of the test for intervention." Dkt. 147. On October 22, 2025, the State and OPSO submitted their briefs. Dkt. 150, 151.

## ARGUMENT

The federal government may "attend to the interests of the United States in a suit pending in a court of the United States." 28 U.S.C. § 517. The Court has discretion over whether to permit statements of interest. *See Cont'l Auto. Sys., Inc. v. Avanci, LLC,* 485 F. Supp. 3d 712, 724 (N.D. Tex. 2020). In exercising that discretion, courts consider whether "the information is timely, useful, or otherwise necessary to the administration of justice." *Id.* at 724. The Statement is not useful, necessary, or timely as it does not discuss Rule 24's requirements and was filed months late.

### I. The Statement is Neither Useful nor Necessary

A federal government motion "for leave to file a statement of interest is akin to a motion for leave to file an *amicus* brief." *United States ex rel. Thompson v. Apollo Path, LLC*, No. 3:20-CV-2917-D, 2025 WL 256979, at *2 (N.D. Tex. Jan. 21, 2025). Though leave for *amici* before the Courts of Appeal should be freely granted, the standard is higher at the district court level. *See Boudreaux v. Sch. Bd. of St. Mary Par.*, No. 6:65-CV-11351, 2023 WL 4771231, at *3 (W.D. La. July 24, 2023). In deciding whether to grant leave to file a brief, the court considers whether the proposed *amicus* "'ma[d]e a showing that his participation [wa]s useful to or otherwise desirable by the court,' the neutrality of the proposed amicus, whether the parties were represented by competent counsel, and whether the parties opposed the participation as amicus."

*United States v. City of New Orleans*, No. CV 12-1924, 2022 WL 4465534, at *1 (E.D. La. Sept. 26, 2022). In addition, an "amicus who argues facts should rarely be welcomed." *Id.* Briefing is useful and necessary when it addresses issues "relevant to the instant case." *Texas v. United States*, No. 6:21-CV-00003, 2021 WL 2172837, at *2 (S.D. Tex. Mar. 5, 2021).

### A. The Statement is Irrelevant and Fails to Show Practical Impairment

The federal government claims that it is filing its Statement because "[j]udicial action on Louisiana's pending Motion to Intervene and Motion to Terminate the Consent Judgment is urgently needed." Dkt. 146 at 1. However, none of the federal government's arguments address Rule 24's intervention criteria. *Id*.

When determining whether to allow intervention as of right, courts consider the following requirements: "(1) [t]he application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit."[1] *Sierra Club v. Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994) (interpreting Fed. R. Civ. P. 24(a)(2)). To prevail on the third factor, a movant must demonstrate that denial of intervention will, "as practical matter impair or impede" a "protectable legal interest." *Mac Sales Inc. v. E.I. Dupont De Nemours*, No. CIV. A. 89-4571, 1995 WL 581790, at *3 (E.D. La. Sept. 29, 1995). Intervention "is not appropriate where the applicant can protect its

---

[1] While the Court requested that the parties address practical impairment, the State's argument that OPSO would not adequately represent its interests has weakened. Orleans Parish has elected a new sheriff, Michelle Woodfork, who stated "I don't have any problem getting out of the decree" during her campaign. *See* Piper French, *In New Orleans, a Police Veteran Will Take the Helm of a Jail Marred by Abuses*, Bolts, Oct. 15, 2025, https://boltsmag.org/new-orleans-sheriff-michelle-woodfork-wins/.

3

interests and/or recover on its claim through some other means." *Deus v. Allstate Ins. Co.,* 15 F.3d 506, 526 (5th Cir. 1994).

Consequently, impairment analysis centers around the movant's ability, *i.e.* means, to protect its interest, rather than temporary harm to the interest itself. *Atlantis Dev. Corp. v. United States,* 379 F.2d 818, 822 (5th Cir. 1967) (finding that "an immediate operative effect upon the intervenor" is insufficient for a movant to carry its burden). This Court's recent decision in *Hancock Whitney Bank v. MOF-Willows, LLC* is instructive. CV 25-1152, 2025 WL 2337129 (E.D. La. Aug. 13, 2025). This Court found that a decreased possibility that the movant could collect a judgment in the future did not compel an impairment finding because denial of intervention did not "restrict[] the state court's ability to issue" a judgment in favor of the movant. *Id*. at *9. To prevail, therefore, a movant must demonstrate impairment of its ability to otherwise sue to protect its interest over the alleged wrong.

Plaintiffs make two primary arguments against impairment. First, Plaintiffs argue that pursuant to La. Rev. Stat. Ann. § 33:85(A), the State can, at any time, sue in state court regarding perceived violations of state law. Dkt. 127 at 12. Second, Plaintiffs explain that a consent judgment, by its nature, has no preclusive effect on a party to bring its own litigation. *Id*. at 13.

The Statement does not address whether the State would face impairment absent its intervention in this case. Rather, the federal government asserts simply that the State "has a pressing interest in ending [the current] situation without delay," a conclusory statement about the release of certain immigrants that it alleges are dangerous, which bears no relation to the intervention standards. Dkt. 146 at 2. Nor does the Statement address whether the State may use alternative means to advance any interest it has in maximum compliance with state law. At most, the Statement explains the federal government has an interest in terminating the Consent

Judgment. It does not address the State's interest or whether the State has the ability to protect those interests. Nor does the federal government explain why a twelve-year-old Consent Judgment prevents the State from seeking redress in state court.

The State now argues that the OPSO's decision to refuse voluntary detainer requests in these cases demonstrates that its interests are "actually, and presently being impaired." Dkt. 150 at 5. Pursuant to *Atlantis Dev. Corp.* and *Hancock Whitney Bank*, the State here must demonstrate that denial of intervention would impair its ability to vindicate its rights **in the future**. Even now, the State does not explain why its interests must be addressed **now**, in this forum.

The State cites *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022) and *Gen. Land Off. v. Trump*, No. 24-40447, 2025 WL 1410414 (5th Cir. May 15, 2025) in support of its impairment argument. Dkt. 150 at 4-5. Plaintiffs explained in their Sur-Reply that *La Union del Pueblo Entero* did not address the alternative means argument at issue here. Dkt. 142 at 4. As to *Gen. Land Off.*, this Court considered its effect on the impairment requirement in *Hancock Whitney Bank*, 2025 WL 2337129, at *9. Specifically, this Court found that "while the possibility of bringing a lawsuit or having one pending 'does not suffice to deny intervention,' it is the movant's burden to demonstrate the **disposition of the case** would practically impair its interest." *Id.* (quoting *Gen. Land Off. v. Trump*, No. 24-40447, 2025 WL 1410414, at *9) (emphasis added). In other words, while the existence of alternative forums is not on its own fatal to an impairment claim, the converse is not true. Having to file another suit is not *per se* impairment. This Court denied intervention in *Hancock Whitney Bank* because the movant failed to demonstrate why initiating its own case was not viable. *Id*.

5

So here. First, the State does not answer the question of why cases premised on the practical disadvantages faced by movants should they not be allowed to intervene pre-decision should apply post decision. Indeed, none of the cases cited by the State address this situation. Next, the State acknowledged in its April 30, 2025 oral argument that this case may present abstention issues. Abstention doctrine requires that federal courts "generally abstain from exercising jurisdiction in a matter when an unsettled area of state law has an effect on the outcome of a federal constitutional claim or would render a decision on the federal issue unnecessary." *Moore v. Tangipahoa Par. Sch. Bd.*, 507 F. App'x 389, 395 (5th Cir. 2013). As such, a state court is best situated to make initial determinations concerning whether state law requires specific OPSO action, such as abandoning its anti-bias policy notwithstanding the constitutional issues raised in this lawsuit and the existence of a federal consent judgment. *See* Compl., Dkt.1, ¶¶ 70-73. Moreover, termination of the Consent Judgment does not necessarily end OPSO's anti-bias policy, just the agreement mandating that OPSO keep that policy in place. The State may still need to seek a remedy in State court should OPSO not modify its policy. The State may be able to press its claims faster in state court given the Court's limited operations during the government shutdown.[2]

The State further relies on dicta from the Supreme Court's decision in *Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179 (2022). Dkt. 150 at 5; *see also United States v. Idaho*, No. 1:22-CV-00329-BLW, 2023 WL 1767387, at *2 (D. Idaho Feb. 3, 2023) (finding that the argument "that federal courts should permit intervention as of right when a state applicant demonstrates that a state law expressly authorizes such intervention… overstates *Berger's*

---

[2] *See Judiciary Funding Runs Out; Only Limited Operations to Continue, U.S. Courts*, (Oct. 17, 2025) https://www.uscourts.gov/data-news/judiciary-news/2025/10/17/judiciary-funding-runs-out-only-limited-operations-continue.

6

holding.") As discussed in Plaintiffs' Sur-Reply, impairment was not at issue in *Berger*. Dkt. 142 at 4. Specifically, the opposing party in *Berger* argued that the state intervenor lacked a cognizable interest. 597 U.S. at 193. The parties did not argue and the Supreme Court did not consider the alternative means argument at issue in this case.

None of these cases overrule the Fifth Circuit's longstanding requirement that a movant demonstrate impairment of its ability to right the wrong it complains of. *See* Dkt. 127 at 11-13; *Lee v. Anthony Lawrence Collection*, L.L.C., 47 F.4th 262, 267 n.2 (5th Cir. 2022) (citing *Atlantis Dev. Corp.* approvingly post-*Berger*). That OPSO has allegedly released immigrants that the State wishes detained by the federal government is of no import to the impairment analysis. The State has not shown impairment of its ability to protect its interests via means other than intervention.

### B. The Statement is Unreliable

The Statement also relies on inadmissible and otherwise unreliable evidence. First, the Statement relies on inadmissible hearsay. The newly introduced facts are supported only by Deportation Officer Braud's Declaration, which is not based on personal knowledge, as required by Federal Rule of Evidence 602. *See Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 374 (5th Cir. 2007) (requiring that declarations "must contain information that would allow the court to conclude that the averments are made on personal knowledge"). Instead, Officer Braud admits that the statements are only partially based on personal knowledge and are also based on "information that other ICE employees provided." Braud Decl., Dkt. 146-1 ¶ 3. Information provided by unnamed coworkers of Officer Braud is hearsay because it comprises assertions by persons other than the declarant offered for the truth of the matter asserted. Fed. R. Evid. 801.

Officer Braud's Declaration cannot escape scrutiny on the basis of any hearsay exception, either, because it says nothing about the recordkeeping practices behind these assertions that might indicate trustworthiness. *See* Fed. R. Evid. 807(1), 803(6); *cf. Gahagan v. U.S. Citizenship & Immigr. Servs.*, No. CIV.A. 15-796, 2015 WL 6738549, at *4 (E.D. La. Nov. 4, 2015).

These documents also appear to be cherry picked and missing critical information. Most of the asserted facts in the statement seem to derive from state criminal arrest or court records which are easily accessible online.[3] Yet the federal government does not provide these records. In half of the cases highlighted by Officer Braud's declaration, the full docket of the matter shows that the State dropped all charges. The federal government seeks to paint Juan Dubon Argueta, Rafael Mendez, and Arnold Molino Mendez as dangerous individuals who OPSO released. However the State refused all charges against Mr. Dubon Argueta. Exhibit 1, Declaration of Mary Yanik ("Yanik Decl."), Exh. A. All of the charges against Rafael Mendez have also been dismissed. *Id.*, Exh. B. The State also refused all charges against Molino Mendez.[4] *Id.*, Exh. C.

Even if the Court accepts the facts in the declaration provided by the federal government to be true, they still do not support the argument advanced by both the federal government and State. If anything, parts of the declaration demonstrate that the State's prosecution decisions are the proximate cause of release, not OPSO policy. This is most clearly the case for Franklyn Orellano Velasquez, who Officer Braud asserts was transferred to criminal custody "to face

---

[3] *See* Yanik Decl. ¶¶1-3, 10; OPSO, Docket Master, (last accessed Oct. 8, 2025) https://www.opso.us/index.php?option=com_wrapper&view=wrapper&Itemid=784.
[4] Darwin Gonzalez Munoz was never convicted of any crime, as ICE deported him before resolution of his criminal court case despite the court's active warrant. *See* Yanik Decl., Exh. D.

murder charges." Braud Decl. ¶ 10. Officer Braud alleges that ICE submitted a detainer to OPSO for Mr. Orellano Velasquez about a month later. *Id*. ¶ 11. Under the OPSO policy, its officials are directed to cooperate with voluntary ICE detainers for individuals facing first or second degree murder charges. Dkt. 96-2 ¶ 2. Therefore, OPSO would have continued to detain Mr. Orellano Velasquez for transfer to ICE even if he was ordered released by the criminal court while facing murder charges. *Id*. But that is not what happened in this case. As Officer Braud goes on to relay, "the State then reduced the murder charge to an obstruction charge and released Velasquez."[5] Braud Decl. ¶ 11. The State's decision to reduce charges, not OPSO's policy, caused his release.

## II. The Statement of Interests is Untimely

In determining whether a statement of interest is timely,[6] courts often defer to the deadlines for *amicus* briefs set in Fed. R. App. P. 29. *See U.S. ex rel. Gudur v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920, 928 (S.D. Tex. 2007), *aff"d sub nom. U.S. ex rel. Gudur v. Deloitte & Touche,* No. 07-20414, 2008 WL 3244000 (5th Cir. Aug. 7, 2008). Alternatively, Courts will also consider any previously set briefing deadlines. *See e.g. Gudur,* F. Supp. 2d at 928 (finding statement of interest untimely when filed twenty-two days after the close of briefing). Under the former approach, *amicus curiae* must file its brief "no later than 7 days after the principal brief of the party being supported is filed." Fed. R. App. P. 29(e). This deadline "is long enough to permit an amicus to review the completed brief of the party being supported and

---

[5] Since obstruction is a much less serious charge, and is not listed as an exception to OPSO's policy, OPSO's alleged actions in this case are consistent with the court-approved policy. Dkt. 96-2 ¶ 2.

[6] The Court may also analyze the Statement under Fed. R. Civ. P. 15(d). Under this rule, supplemental briefing is appropriate only if "new events transpired that would make a supplemental…briefing… appropriate." *Sessums v. Shell USA, Inc.*, No. CV 24-104, 2025 WL 1115633, at *3 (E.D. La. Apr. 15, 2025). The Statement introduces facts available, but not previously submitted. Braud Decl. ¶¶ 4-22.

avoid repetitious argument" and "short enough that no adjustment need be made in the opposing party's briefing schedule." Fed. R. App. P. 29(e) Adv. Comm. Notes to 1998 Amend. Under the latter approach, the government must "explain why the arguments it raised" could not have been raised in earlier filings or prior to the deadline. *Gudur,* F. Supp. 2d at 928.

If it is a statement of interest akin to an *amicus* brief, it is more than five months late, having been due on February 21, 2025, seven days after the State's original brief was filed on February 14, 2025. *See* Fed. R. App. P. 29(e). The Statement was not filed until July 23, 2025. Dkt. 146. Even considering the entire briefing schedule, the statement comes three and a half months after briefing closed on April 11, 2025. Dkt. 123. While 28 U.S.C. § 517 authorizes the federal government to seek leave to file statements of interest,[7] nothing in the statute allows it to weigh in on a matter whenever and as many times as it desires. The federal government does not explain its delay or why its arguments could not have been raised in its initial statement or during the Court's motion hearing. As such, the Statement is untimely.[8]

---

[7] The federal government must seek leave before filing a statement of interest. *See Cathey v. First Republic Bank*, No. CIV.A. 00-2001-M, 2001 WL 36260354, at *1 (W.D. La. July 6, 2001). Additionally, pursuant to Local Civil Rule 7.4, "[m]emoranda may not be supplemented, except with leave of court." LR 7.4. Courts may strike briefing for failure to seek leave. *Shargian v. Shargian*, 591 F. Supp. 3d 100, 107 (E.D. La. 2022). The federal government did not seek leave here.

[8] The State's plan to appeal "effective denial" of intervention is inappropriate for the same reason. *See* Dkt. 150, at 3. The State never produced evidence that the Sheriff is not complying with ICE detainer requests and the instant Statement came more than three months after the hearing. Dkt. 146. It is well-settled that the Court has discretion to manage its time and the competing demands of its numerous cases. *See Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 849 (5th Cir. 1996). Further, none of the cases cited by the State hold that months-long deliberation of an intervention motion is an appealable order. *Heaton* concerned the appeal of an order remanding a case to state court, which effectively denied intervention. *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 420 (5th Cir. 2002). The other cited cases hinged on impending statutory or regulatory deadlines and requests for preliminary injunction. *In re Fort Worth Chamber of Com.*, 100 F.4th 528, 532 & n.5 (5th Cir. 2024) (permitting appeal of effective denial of *a preliminary injunction* regarding rule effective in 11 days because it "'might cause irreparable harm absent immediate appeal'") (quoting *Clarke v. CFTC*, 74 F.4th 627, 635 (5th Cir. 2023)); *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 242–44 (6th Cir. 2006) (permitting intervenor to challenge preliminary injunction of state constitutional amendment effective in 5 days). But here there is no request for preliminary injunction and no upcoming statutory or regulatory deadline.

DATED October 22, 2025.

Respectfully submitted,

<div style="display: flex;">

/s/ _Mary Yanik_
**Mary Yanik**
Louisiana Bar No.: 36973
TULANE LAW CLINICS
6329 Feret Street, Suite 130
New Orleans, LA 70118 Tel.:
(620) 341-2653 (cell)
(504) 865-5153 (general office)
myanik@tulane.edu

**Jeremy Jong***
New Jersey Bar No.: 066472014
AL OTRO LADO
634 S Spring St., Suite 908
Los Angeles, CA 90014
Tel.: (504) 475-6728
jeremy@alotrolado.org

**Cassandra Charles***
New York Bar No.: 5540133
NATIONAL IMMIGRATION LAW CENTER
PO Box 34573
Washington, DC 20043
Tel.: (213) 674-2814
charles@nilc.org

**Bridget Pranzatelli****
DC Bar No. 90029726
NATIONAL IMMIGRATION
PROJECT OF THE NATIONAL
LAWYERS GUILD
1763 Columbia Rd. NW,
Suite 175 #896645
Washington, DC 20009
Tel.: (504) 569-5650
bridget@nipnlg.org

</div>

\*   *Admitted Pro Hac Vice*
\*\* *Motion for Pro Hac Vice Admission Pending*

*Counsel for Plaintiffs Mario Cacho and Antonio Ocampo*

11