# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARIO CACHO AND ANTONIO OCAMPO,<br><br>PLAINTIFFS,<br><br>v.<br><br>SHERIFF MARLIN N. GUSMAN, ORLEANS PARISH SHERIFF,<br><br>DEFENDANT. | Civil Action No. 2:11-cv-225<br><br>Judge: Hon. Janis Van Meerveld |

**INTERVENOR STATE OF LOUISIANA'S REPLY IN SUPPORT OF ITS MOTION TO TERMINATE OR DISSOLVE THE CONSENT DECREE (ECF NO. 96)**

## INTRODUCTION

The most conspicuous aspect of the opposition briefing is what is missing: The Orleans Parish Sheriff's Office (OPSO) did not file one. That silence is a welcome and telling development, particularly given recent public statements suggesting a desire to maintain the consent decree. *See* WWLTV, FULL DEBATE: Orleans Parish sheriff candidates face off on jailbreak, crime & trust, (Sept. 4, 2025), t.ly/2POen, at 34:54–35:52. ("I think where it is at right now is where we need to stay."). But maintaining that decree has dire consequences. Violent criminal illegal aliens end up released to Louisiana's streets after arrests for rape, armed robbery, aggravated assaults on children, and grand theft auto. *See* U.S. Dept. of Homeland Security, *DHS Launches Operation Catahoula Crunch* (Dec. 3, 2025), t.ly/k8s0p. With federal agents now forced to clean up the mess this decree enables, the State welcomes the day when "th[is] consent judgment goes away," and OPSO "will follow state law[.]" *Supra* WWLTV Orleans Parish Sheriff Debate at 34:54–35:52.

The only people left defending this consent decree are two men who were released from OPSO custody in *2010*, back when Blockbuster was filing for bankruptcy. *See* Compl. ¶¶ 37, 54. It no longer functions as a remedial tool addressing anyone's ongoing constitutional violation. *See Chisom v. Louisiana ex rel. Landry*, 116 F.4th 309, 316 (5th Cir. 2024) (en banc). It should thus be terminated under the plain terms of the Prison Litigation Reform Act (PLRA) or dissolved under Rule 60(b)(5) as satisfied and no longer equitable. *See* Mot.7–11. Rather than address the State's arguments, Plaintiffs resort to rebranding their case to dodge the PLRA, demanding futile discovery, and asking to certify irrelevant questions to state court. Those

2

desperate diversions offer no reprieve for this dangerous consent decree long overdue for termination.

## ARGUMENT

**I.  The Consent Decree Should Be Terminated Under the PLRA.**

The PLRA's strict limitations on prospective injunctive relief plainly apply to this "civil action with respect to prison conditions," 18 U.S.C. § 3626(a)(1), because it is a "civil proceeding arising under Federal law with respect to the conditions of confinement *or* the effects of actions by government officials on the lives of persons confined in prison," *id.* § 3626(g)(2) (emphasis added). *See* Mot.7–8 (collecting cases). That deliberately broad language encompasses all "actions" that might "make" "the lives of prisoners" "worse." *Booth v. Churner*, 206 F.3d 289, 295 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001); *contra* Opp.5–6 (appealing to purpose and legislative history rather than the plain text). And Plaintiffs themselves readily admit (when convenient) that this case fits squarely within that definition. *See* Compl. ¶ 3 (OPSO's cooperation with immigration detainers has "effects … on the lives of persons confined in prison"); *accord* Opp.25 (without "*this* litigation, it is likely that detainees held pursuant to ICE detainers will be subjected to unconstitutional and dangerous conditions in the OPP").

Properly applied, the PLRA therefore requires termination of the consent decree. The decree was never predicated on the kind of narrowly tailored, minimally intrusive, prospective relief the statute permits. *See* 18 U.S.C. § 3626(b)(1)(A)(i) ("[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular

3

plaintiff or plaintiffs"). Because the PLRA governs, the State's motion to terminate began to "operate as a stay" of the consent decree on December 7, 2025, and the consent decree has not been in effect since. *See* ECF No. 161 (citing 18 U.S.C. § 3626(e)(2)(A)(i)). And nothing about Plaintiffs' untimely request to "postpone" the PLRA's automatic stay (without ever articulating the good cause to do so) is simply a request for an unlawful order "staying, suspending, delaying, or barring the operation of the automatic stay," immediately appealable under 18 U.S.C. § 3626(e)(4).[1] *See* Opp.8–9.

Running away from their own concessions, *see* Compl. ¶ 3; Opp.25, Plaintiffs recast this case as an "overdetention" action to evade the PLRA's limitations on prospective injunctive relief. *See* Opp.1, 4–5. That is misdirection. None of the *Crittindon* line of cases mentions the PLRA, much less its limits on permanent, prospective, injunctive relief. *See Crittindon v. LeBlanc*, 37 F.4th 177, 181 (5th Cir. 2022); *Hicks v. LeBlanc*, 81 F.4th 497, 500 (5th Cir. 2023); *McNeal v. LeBlanc*, 90 F.4th 425, 429 (5th Cir.), *cert. denied*, 145 S. Ct. 266 (2024). That is no surprise. Those cases were § 1983 *damages* suits at the motion to dismiss or summary judgment stage where exhaustion was not at issue. *See* Opp.4–5 (collecting cases). Nor is it clear how Plaintiffs' belief that their decade-ago detention was unlawful would alter the

---

[1] Although § 3626(e)(3)'s authorization to "postpone" may appear ambiguous in isolation, it is best understood as exclusively pre-expiration in light of the text and surrounding context of the PLRA. *First*, § 3626(e)(2) provides that once the statutory trigger date passes, the automatic stay "shall operate" pending final resolution, mandating a legal state of affairs. *Second*, that reading is reinforced by statutory symmetry, for § 3626(a)(2) permits temporary prospective relief only if the court acts before the expiration date, and relief cannot be revived retroactively. *Third*, read together, these provisions harmonize the statute and explain why Congress made any order "staying, suspending, delaying, or barring" the automatic stay immediately appealable under § 3626(e)(4)—once the stay is in force, judicial interference is unlawful.

4

unavoidable fact that this "action[]" resulted in a consent decree regulating jail operations in a way Plaintiffs themselves say "make[s]" "the lives of prisoners" better or "worse." *Booth*, 206 F.3d at 295.

Also beside the point is Plaintiffs' insistence that Cacho and Ocampo are ineligible for *in forma pauperis* status under the PLRA's definition of "prisoner." *See* Opp.5–6 (citing 28 U.S.C. § 1915). Whatever the answer to that question, it has zero bearing on whether this lawsuit is a "civil action with respect to prison conditions." 18 U.S.C. § 3626(a)(1). On Plaintiffs' telling, it is. *See* Compl. ¶ 3; Opp.25. Accordingly, the PLRA applies, and termination is the proper course on this record.

In an odd attempt to dodge that result, Plaintiffs suppose they could conduct discovery and then the Court could "preserve" the decree by making the PLRA's required finding's today. *See* Opp.9–10. Not so. *First*, the Court's failure to make (and Plaintiffs' failure to prove up) the PLRA's need-narrowness-intrusiveness findings a decade ago rendered the consent decree unlawful under the PLRA from day one. And it cannot be revivified by some post-hoc rationalization a decade later. *Second*, of course, the PLRA contemplates an opportunity to maintain a lawful consent decree through a need-narrowness-intrusiveness analysis. But Plaintiffs' opposition brief was their chance to do just that, and they—and OPSO—have offered exactly nothing of substance despite their heavy burden to show the relief is necessary for *these* plaintiffs. *Finally*, remember the subject-matter-jurisdiction elephant in the room: These two undetained Plaintiffs lack (and lacked) standing to obtain or maintain the prospective injunctive relief they seek. *See Attala Cnty., Miss. Branch of NAACP v.*

*Evans*, 37 F.4th 1038, 1042 (5th Cir. 2022) (For "prospective equitable relief, a plaintiff must demonstrate continuing harm or a 'real and immediate threat of repeated injury in the future.'"). No amount of hand-waving about discovery and evidentiary hearings could ever restore that fundamental, jurisdictional defect.

The point is not lost on the State that Plaintiffs want "continued judicial oversight of the OPSO" by any means necessary. *See* Opp.11. But "curbing the equitable discretion of district courts was one of the PLRA's principal objectives," *Miller v. French*, 530 U.S. 327, 330 (2000), which is why it places "strict limits on federal courts' ability to fashion civil prospective relief" in cases like these, *United States v. Hinds Cnty. Bd. of Supervisors*, 128 F.4th 616, 625 (5th Cir. 2025). OPSO's silence—and Plaintiffs' inability to articulate any PLRA-compliant basis for continued injunctive relief— confirms that termination is required.

## II. Alternatively, the Court Should Dissolve the Consent Decree Under Rule 60(b)(5).

The Court can alternatively dissolve the consent decree under Rule 60(b)(5). As the en banc Fifth Circuit recently reaffirmed, "consent decrees are 'not intended to operate in perpetuity,'" and once the alleged constitutional defect is remedied, "it is the courts' duty to bring federal control over the issue to its proper end." *Chisom*, 116 F.4th at 316. So much so that the Fifth Circuit has installed itself as a "check on district courts to ensure that [federalism] principles are followed." *Id.* at 317. Rule 60(b)(5) provides two independent paths to that result here: The consent decree has been satisfied by its own terms, and continued enforcement is no longer equitable in light of intervening changes in state law. *See* Mot.9–11.

Rather than confront those principles, Plaintiffs seek to delay dissolution by urging certification of (and arguing over) irrelevant state-law questions, Opp.11–13, 18–23, and by quibbling with the State's entitlement to dissolve the decree as an intervenor, Opp.15. Neither of those moves engages the Rule 60(b)(5) inquiry this Court must undertake.

Certification is unnecessary because interpretation of Act 314 is immaterial to dissolution under the consent decree's own terms. *See Stanford ex rel. Phillips v. Brandon Nursing & Rehab. Ctr., L.L.C.*, No. 24-60509, 2025 WL 3237635, at *3 (5th Cir. Nov. 20, 2025) (considering avoidance of "significant delay" and "possible inability to frame the issue so as to produce a helpful response on the part of the state court"). The consent decree provides that it has "permanent effect, absent a change in federal or state law applicable to immigration detainers." ECF No. 96 ¶ 4. State law applicable to immigration detainers changed with the enactment of Act 314. That change alone ends the decree's permanent effect, and no answer from the State's high court (or the supposed degree of consistency between Act 314 and the consent decree, *see* Opp.11, 18–23) would yield a response that could alter that result.[2]

Absent the certification sideshow, Plaintiffs offer no substantive pushback to the State's Rule 60(b)(5) analysis. Instead, they contend (incorrectly) that the State somehow lacks authority to move for dissolution of the consent decree. Opp. 15. That

---

[2] The irrelevant questions Plaintiffs seek to certify (at 21–23) are also not close calls. *See Stanford*, 2025 WL 3237635, at *3 (considering "the closeness of the question"). Cacho and Ocampo are not municipalities with home rule charters or who face unfunded mandates, *but see* Opp.21–23— and would lose mightily even if they were, *see, e.g.*, *Scott v. La. State Police*, 2024-01591 (La. 1/9/25), 398 So. 3d 634, 634 (quoting La. Const. art. VI, § 9(B)).

7

is difficult to square with this Court's order that the State has an intervenor-sufficient "interest" "in dissolving the consent decree so that the OPSO cannot use it as a justification for refusing to modify its policy to come into compliance with the State's antisanctuary law." ECF No. 156 at 11. That is because "the State cannot enforce its law until the consent decree is modified or dissolved." *Id.* So the State "may be able to dissolve the consent decree." *Id.* at 14. And the Court's articulation is on all fours with settled law about intervention: The "original parties" cannot use a "stipulation between" them to "bind intervenors who come into the case afterward." 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1920 (3d ed. 2024) (citing *Kneeland v. Luce*, 141 U.S. 437 (1891)). Instead, "[u]nless conditions have been imposed," the State must be "treated as if [it] were an original party and has equal standing with the original parties" and "is entitled to litigate fully on the merits once intervention has been granted." *Id.* Accordingly, the State, having intervened to protect its sovereign interests, may seek dissolution of the consent decree under Rule 60(b)(5) on the same footing as any original party.

One final point bears mention: Plaintiffs' unsupported suggestion that this consent decree is not "detrimental to public interest" (at 17, 20) blinks reality. The State speaks for the public interest here. *See Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013) ("[I]t is the government's basic duty to represent the public interest [in public law litigation]."); *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("[P]ublic interest [lies] in the enforcement of [state] laws."); *cf. Pennsylvania v. Williams*, 294 U.S. 176, 185 (1935) ("It is in the

8

public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy."). And spoken it has: Since May 2024, the Orleans Parish Sheriff's Office has received over 100 immigration detainers from U.S. Immigration and Customs Enforcement and, under the cover of this consent decree, has honored at most 2 of them, ECF No. 148 ¶ 45, while repeatedly releasing dangerous offenders in open defiance of state law, *e.g.*, *id.* ¶¶ 17–22. It is difficult to imagine a decree more directly detrimental to the public interest. Under Rule 60(b)(5), applying such a decree prospectively is no longer equitable, and it should be dissolved.

## CONCLUSION

The Court should terminate the consent decree under the PLRA or, alternatively, dissolve the decree under Rule 60(b)(5).[3]

---

[3] The Court should likewise decline to entertain Plaintiffs' procedurally improper suggestion that the Court only modify the consent decree to some unspecified degree. Opp.11, 23–25.

Dated: December 15, 2025

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General of Louisiana

 /s/ *Zachary Faircloth*
ZACHARY FAIRCLOTH (LA 39875)
  Principal Deputy Solicitor General
OFFICE OF THE LOUISIANA ATTORNEY
GENERAL
1885 North Third Street
Baton Rouge, LA 70804
Telephone: (225) 421-4088
Facsimile: (225) 326-6795
FairclothZ@ag.louisiana.gov

*Counsel for the State of Louisiana*

## CERTIFICATE OF SERVICE

On December 15, 2025, I hereby certify that I caused this document to be served electronically on all counsel of record by filing the document using the CM/ECF system.

*/s/ Zachary Faircloth*
Zachary Faircloth (La. #39875)