**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **MARIO CACHO and ANTIONIO OCAMPO** | * | **CASE NO. 11-225** |
| **vs.** | * | **DIV. 1** |
| **SUSAN HUTSON, ORLEANS PARISH SHERIFF** | * | **MAG. JUDGE VAN MEERVELD** |
| | * | |

**UNITED STATES' MEMORANDUM IN OPPOSITION**
**TO MOTION TO CONSOLIDATE**

## I. Introduction and summary of the argument

**MAY IT PLEASE THE COURT:** Defendant, Susan Hutson, in her official capacity as Orleans Parish Sheriff's (OPSO), motion to consolidate cites the right legal standard, but misapplies the elements. Rec. Doc. 175. The present civil-rights action under 42 U.S.C. § 1983, resolved by settlement agreement and final consent judgment in 2013, has no common legal or factual issues with the United States' pending petition to enforce administrative subpoenas filed under 8 U.S.C. § 1225. *See United States v. Hutson*, No. 26-113 (E.D. La.), Sect. O(3) (subpoena action). In fact, the two cases don't even meet the lesser standard for relatedness under Eastern District of Louisiana Local Rule 3.1 (collateral proceedings and refiled cases). The United States was never a party to the captioned civil action, whether preceding entry of final judgment or in post-judgment motion practice under Rule 60(b). Further, the Court's resolution of the State of Louisiana's pending motion to dissolve a consent decree under that rule will have no adverse effect on a different section of Court's determination of the United States' petition to enforce administrative subpoenas. For these reasons, as further explained below, the Court should deny the OPSO's motion to consolidate.

## II. Facts and procedural background

### a. *Cacho* consent judgment

Two private individuals, Cacho and Ocampo, filed a complaint against the OPSO in 2011 for violations of 42 U.S.C. § 1983, the federal civil-rights statute, and various Louisiana state-law torts. *See* Rec. Doc. 1 (complaint). Cacho and Ocampo alleged that the OPSO unlawfully held them in jail for months after expiration of 48-hour detention requests from the United States Immigration and Customs Enforcement (ICE) agency. *Id*.

The case resolved with a settlement agreement in 2013. The settlement agreement, in turn, required OPSO to adopt a policy governing and restricting its future cooperation with ICE. The Court entered a consent judgment that incorporated the settlement agreement and terminated the case with finality in 2013. *See* Rec. Doc. 96.

The case remained closed and dormant for a dozen years until 2025, when the State of Louisiana successfully intervened, then moved to dissolve the consent decree under FED. R. CIV. P. 60(b). *See* Rec. Doc. 156. The United States filed two statements of interest in support of the State's motion under authority of 28 U.S.C. § 517. Rec. Docs. 134 & 146. The State's motion to dissolve is presently under submission before the Court. Rec. Doc. 159.

### b. Administrative subpoena enforcement action

On January 16, 2026, the United States filed a petition to enforce administrative subpoenas to the OPSO in the matter captioned *United States v. Hutson*, No. 26-113 (E.D. La.), Sect. O(3) at Rec. Doc. 1. In it, the United States alleged that the OPSO had failed to comply with 20 administrative subpoenas issued and served in late 2025 under 8 U.S.C. § 1225. *Id*. The OPSO interposed its *Cacho* policy as the basis for its refusal, but, as the United States alleged, the *Cacho* policy didn't expressly govern the administrative subpoenas, which sought sworn testimony and

documents, not a 48-hour hold on release. *Id*. The United States sought a court order under 8 U.S.C. § 1225(d)(4)(B) compelling the OPSO to comply with the administrative subpoenas under penalty of contempt. *Id*.

The OPSO filed a statement of related case under EDLA LR 3.1, Rec. Doc. 8, but the two civil actions remain pending in different sections and divisions of the Court. The presiding district judge in the subpoena action issued an order initially referring the matter to the assigned U.S. magistrate judge under 28 U.S.C. § 636(b).

    **c. Demonstrative table**

The unrelatedness in law and fact between the two civil actions is best illustrated in a side-by-side comparison:

[SEE TABLE ON FOLLOWING PAGE]

| | ***Cacho*** | **Subpoena action** |
|---|---|---|
| **Initiation** | Complaint filed in 2011. | Petition filed in 2026. |
| **Judicial officer** | On parties' consent to plenary jurisdiction of U.S. magistrate judge with approval of district-court judge under 28 U.S.C. § 636(c). | On referral to U.S. magistrate judge under 28 U.S.C. § 636(b); no consent to plenary jurisdiction of magistrate judge offered, agreed to by all parties, or approved by assigned U.S. district judge under § 636(c). |
| **Resolution** | Settlement agreement, adoption of challenged OPSO policy on ICE cooperation, and final consent judgment in August 2013. | None. The United States' petition is pending and awaiting opposition briefing and a show-cause hearing. |
| **Cause of action and gist** | Federal civil-rights offenses under 42 U.S.C. § 1983; Louisiana state-law torts; monetary damages sought. | Administrative subpoena enforcement under 8 U.S.C. § 1225(d)(4)(B); equitable relief sought. |
| **Outstanding issue** | Whether intervening state law has rendered the final consent judgment void or voidable as a matter of law under Rule 60(b). | Whether outstanding administrative subpoenas are enforceable under the *Morton Salt* jurisprudential test. |
| **Parties** | Two private individuals (plaintiffs); OPSO (defendant); State of Louisiana (intervenor); United States (non-party statements of interest). | United States (plaintiff); OPSO (defendant). No interventions sought or granted. |
| **Posture** | Intervenor's Rule 60(b) post-judgment motion to dissolve consent judgment pending under submission. | OPSO hasn't filed a responsive pleading to the United States' initial petition to enforce in a summary proceeding. |

## III. Argument

### a. Standard of review

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." The party moving for consolidation bears the burden of demonstrating that

consolidation is proper. *Texas v. United States*, No. 21-0016, 2021WL 3171958, at *2 (S.D. Tex. July 26, 2021) (citing *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1532 (5th Cir. 1993)).

A trial court has broad discretion in determining whether to consolidate a case pending before it. *Alley v. Chrysler Credit Corp.*, 767 F.2d 138, 140 (5th Cir. 1985) (citing *N.A.A.C.P. of La. v. Michot*, 480 F.2d 547, 548 (5th Cir. 1973)). District courts within the Fifth Circuit consider several factors to determine if consolidation is warranted: (1) whether the actions are pending before the same court; (2) whether common parties are involved; (3) whether there are common questions of law or fact; (4) whether there is risk of prejudice or confusion if the cases are consolidated, and if so, whether the risk is outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately; and (5) whether consolidation will conserve judicial resources and reduce the time and cost of trying the cases separately. *Henry v. Maxum Indemnity Corp.*, No. 10-1469, 2022 WL 15626272, at *3 (E.D. La. Mar. 18, 2022) (internal citations omitted).

**b. The balance of consolidation factors weighs against the OPSO's motion.**

The OPSO hasn't carried its burden to show that the balance of relevant factors counsel in favor of this Court's discretionary exercise of consolidation authority.

**i. The unrelated cases are pending in different sections/divisions of this Court.**

First, while the two cases are, as the OPSO accurately observes, both pending in the Eastern District of Louisiana, they're pending in two different sections/divisions of the Court. The subpoena action hasn't been transferred to this division of Court under EDLA LR 3.1.1, nor is such a transfer appropriate. As illustrated in the table, *supra* Sect. II.c., there is no overlap between the subject matter or operative facts in the two actions. One was a civil-rights suit for monetary damages arising out of municipal over-detentions occurring in 2009–2010; the other is an

administrative subpoena enforcement matter arising out of the OPSO's non-compliance 15 years later.

Further, while all parties to the *Cacho* matter consented to the U.S. magistrate judge's exercise of full district-court jurisdiction under 28 U.S.C. § 636(c), the district court elected to refer the subpoena action to the assigned U.S. magistrate judge under 28 U.S.C. § 636(b). This distinction is critical because the district judge in the subpoena action has retained jurisdiction under §§ 636(b)(1)(A), (C) to review, accept, modify, or reject the U.S. magistrate judge's determination of the subpoena action. For this reason, consolidation of a § 636(c) consent case (like *Cacho*) with a non-consent case (like the subpoena action) is a practical and legal impossibility. *See Back v. Carter*, 933 F. Supp. 738, 748 (N.D. Ind. 1996) ("The parties in this case have not consented to have this case tried before a magistrate [judge]. Therefore, this Court cannot order this case consolidated with *Hatcher*. To do so would force the parties in this case to proceed in front of the magistrate [judge] against their will. Accordingly, the motion to consolidate is **DENIED**." (emphasis in original)); *Galindo v. Peterson*, No. 18-035, 2018 WL 1858141, at *1 (W.D. Tex. Feb. 16, 2018) (same).

**ii. There isn't unified identity of the parties in the two cases.**

The only common party to the two actions is the movant, the OPSO. This is typically insufficient to justify consolidation. *See* 8 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 42.10 (Lexis online ed. 2026) ("It is an abuse of discretion to consolidate two actions that contain no common issues of law or fact, and the only common factual thread running through such actions is the fact that the same person is the defendant in both the actions."). It's true, as the OPSO notes, that the United States filed statements of interest in support of the State's intervention and motion to dissolve in *Cacho* under 28 U.S.C. § 517. But "[t]he United States need not be a party in a case

to assert its interests under § 517. Moreover, the United States neither waives its sovereign immunity nor becomes a party to the case by so asserting its interests." *Miami Herald Media Co. v. Fla. Dep't of Transp.*, 345 F. Supp. 3d 1349, 1360 (N.D. Fla. 2018). This factor weighs against consolidation.

**iii. There are no common questions of law or fact in the two cases.**

The discrete issue currently pending before the Court in *Cacho* is whether a state law enacted after execution of the consent judgment renders the OPSO's ICE policy adopted therein violative of state law and, therefore, subject to dissolution and vacatur. The issue pending before the Court in the subpoena action is quite different – namely, whether the United States' administrative subpoenas to the OPSO satisfy the governing enforcement precedent of *United States v. Morton Salt Co.*, 338 U.S. 632 (1950). To resolve these issues, the respective sections/divisions of the Court will analyze and apply different laws to different factual histories. This factor also weighs against consolidation.

**iv. There is no risk of inconsistent adjudications of factual or legal issues in the absence of consolidation.**

As the United States' petition in the subpoena action explained, the OPSO's *Cacho* policy is no impediment to judicial relief in that case for a few reasons. First, the *Cacho* policy principally addresses the enforcement of Form I-247 detainer requests for a 48-hour hold issued under authority of 8 C.F.R. § 287.7 and 8 U.S.C. § 1357(d)(3). In contrast, the subpoena action arises out of and seeks enforcement under a completely different statute, 8 U.S.C. § 1225(d)(4)(A).[1] Second,

[1] The OPSO's motion to consolidate alleges that its *Cacho* policy, more broadly, prohibits it from "initiat[ing] any immigration status investigation into individuals in OPSO custody or affirmatively provid[ing] information on an inmate's release date or address to ICE[.]" Rec. Doc. 175-2 at p. 3. The administrative subpoenas at issue, however, don't require the OPSO to initiate its *own* immigration investigation. Similarly, the OPSO hasn't "affirmatively" provided responsive information to the United States of its own volition; to the contrary, responding to the United States' subpoenas for information puts the OPSO firmly in a defensive posture. *Cf. Al-Hammouri v. Am. Bottling Co.*, No. 18-2099, 2019 WL

even if the *Cacho* policy did govern the OPSO's compliance with administrative subpoenas for sworn testimony and documents, *see* note 1, *supra*, the United States alleged several instances where the OPSO's refusal to honor the administrative subpoenas violated its own *Cacho* policy. Finally, no party has disputed the State's assertion that the *Cacho* policy is stayed by operation of law under the Prison Litigation Reform Act, 18 U.S.C. § 3626(e). But even if it isn't stayed, and even if the Court eventually denies the State's pending motion to dissolve the *Cacho* consent decree, the Court in the subpoena action can still grant relief to the United States without impairing or contradicting the *Cacho* policy.

**v. Consolidation would not result in more efficient handling of the cases.**

The Fifth Circuit held that a district court may deny consolidation in instances where the cases are at different stages of preparedness for trial. *See St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 990 (5th Cir. 1983); *Mills v. Beech Aircraft Corp.,* 886 F.2d 758, 762 (5th Cir. 1985). "The court may decide that consolidation is inappropriate where two cases have markedly different procedural postures, with one rapidly nearing final judgment and the other just beginning, so consolidation would not serve judicial economy, but instead delay final resolution in the older case and create unneeded repetition and confusion." *Moller–Maersk v. Safewater Lines*, No. 13-1726, 2017 WL 416296, at *4 n.8 (S.D. Tex. Jan. 31, 2017) (cleaned up).

---

6174375, at *21 (D. Kan. Nov. 20, 2019) ("Lindhoff did not affirmatively provide information to LeRoy about Plaintiff assisting other District Managers or Plaintiff's work on Saturdays. Instead, Lindhoff waited until LeRoy posed these questions, to which Lindhoff responded that certain questionable mileage had been legitimate."). The administrative subpoenas also sought a wide range of information from the OPSO beyond just the inmates' addresses and release dates. Finally, the OPSO's production of documents demanded would not constitute a "civil immigration status investigation at OPSO" premises and the sworn testimony requested of the inmates was requested after "the detainee's first appearance" under the *Cacho* policy. The *Cacho* policy also contemplates that a court order, such as the one sought in the subpoena action, may supersede the policy and control OPSO's obligations.

In this instance, the two cases are at completely different stages of litigation. The parties are litigating whether to undo a final judgment in *Cacho*; the parties haven't yet received one in the subpoena action. *Cacho* has a 15-year procedural history; the subpoena action has just begun. The Court has routinely denied requests for consolidation in instances where cases presented different factual issues and preparedness of trial. For instance, in *Moore v. Allied Trust Insurance Co*., the district court denied a motion to consolidate, finding that the cases were at different stages of preparation because one of the cases was subject to a Hurricane Ida Case Management Order. No. 23-2897, 2024 WL 4370869, at *2 (E.D. La. Oct. 2, 2024); *see also Reyes v. Opulence Trans. Corp.*, No. 92-2312, 1993 WL 114522, at *1 (E.D. La. Apr. 9, 1993) (denying motion to consolidate and finding that the cases involved different laws and starkly different stages of trial preparation). Here, judicial economy would not be served by consolidating these cases because they are in different procedural postures, seek different relief under different standards, and are in different stages of preparation. *See Harris v. Bexar Cnty.*, No. 08-728, 2009 WL 4059092, at *2 (W.D. Tex. Nov. 23, 2009).

## IV. Conclusion

For these reasons, the Court should deny the OPSO's motion to consolidate.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

       Respectfully submitted,

DAVID I. COURCELLE
UNITED STATES ATTORNEY

s/Peter M. Mansfield

PETER M. MANSFIELD (#28671)
BROCK D. DUPRE (#28563)
Assistant United States Attorneys
U.S. Attorney's Office (E.D. La.)
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130-7212
Telephone: (504) 680-3047
Email: Peter.Mansfield@usdoj.gov
Brock.Dupre@usdoj.gov