UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARIO CACHO, ET AL. | NO.:  11-225 |
| VERSUS | DIVISION: (1) |
| SHERIFF MARLIN N. GUSMAN, ORLEANS PARISH SHERIFF | MAGISTRATE JUDGE JANIS VAN MEERVELD |

## CERTIFICATE FROM THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

## TO THE SUPREME COURT OF LOUISIANA

## PURSUANT TO RULE XII OF THE LOUISIANA SUPREME COURT RULES

TO THE SUPREME COURT OF LOUISIANA AND THE HONORABLE JUSTICES THEREOF:

I.   STYLE OF THE CASE

The style of the case is <u>Cacho v. Gusman</u>, Civ. A. No. 11-225, in the United States District Court of the Eastern District of Louisiana. Federal jurisdiction is based upon 28 U.S.C. §§ 1331, 1343, and 1367 because the plaintiffs' action arose in part under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

II.   BACKGROUND

This lawsuit was filed in 2011 by two individuals alleging the Orleans Parish Sheriff held them in custody without lawful authority for months after the applicable hold request from the United States Immigration and Customs Enforcement ("ICE") had expired. The parties settled and

1

the Court entered a consent decree, which required the Sheriff to enter into a policy concerning ICE detainer requests.

The one-page policy provides:

1. For purposes of this section, a voluntary Immigrations and Customs Enforcement ("ICE") detainer request shall be defined as any request, including but not limited to Form 1- 247 (also known as a "48 hour hold"), which seeks continued detention of an inmate beyond expiration of municipal, state, or federal charges, or a finding of no probable cause, or a posting of bail or parole, or a completion of a sentence, or lifting of another jurisdiction or agency's detainer, or a court ordered release. ICE criminal warrants, or any court order for continued detention shall not be considered voluntary ICE detainer requests for purposes of this section.

2. The Orleans Parish Sheriff's Office shall decline all voluntary ICE detainer requests unless the individual's charge is for one or more of the following offenses: First Degree Murder (La. R.S. 14:30); Second Degree Murder (La. R.S. 14:30.1); Aggravated Rape (La. R.S. 14:42); Aggravated Kidnapping (La. R.S. 14:44); Treason (La. R.S. 14:113); or Armed Robbery with Use of a Firearm (La. R.S. 14:64.3). If a court later dismisses or reduces the individual's charge such that the individual is no longer charged with one of the above offenses or the court recommends declining the ICE hold request, OPSO will decline the ICE hold request on that individual.

3. OPSO officials shall not initiate any immigration status investigation into individuals in OPSO custody or affirmatively provide information on an inmate's release date or address to ICE.

4. Prior to any interview pertaining to an ICE criminal investigation, ICE must notify the subject inmate's attorney, provide a reasonable opportunity for counsel to be present during the interview, and certify to OPSO that this notice and opportunity has occurred. Absent a criminal warrant or court order transferring custody, no ICE agent shall be permitted into the secure area of the Intake and Processing Center. Absent a court order, OPSO shall not allow ICE to conduct civil immigration status investigations at OPSO or otherwise interview an inmate before the detainee's first appearance.

5. Any individual who alleges a violation of the policy set forth herein may file a written complaint for investigation with the Orleans Parish Sheriff's Director of Intake and Processing.

Rec. Doc. 96-2. Paragraph 4 of the consent decree requires this policy "remain permanently in effect absent a change in federal or state law applicable to immigration detainers." Rec. Doc. 96, ¶ 4. The Orleans Parish Sheriff's Office has been operating pursuant to this policy since 2013.

More than a decade later, the Louisiana Legislature drafted and passed S.B. 208, which the Governor signed into law on May 28, 2024, titled the "Prohibition on Sanctuary Policies for Illegal Immigration." *See* 2024 La. Sess. Law Serv. Act 314 (S.B. 208) (codified at La. Stat. Ann. § 33:81-33:85). The law became effective the same day. Id. It provides, in relevant part, that "[a] state entity, law enforcement agency, or local governmental entity may not adopt or have in effect a sanctuary policy" and "[a] law enforcement agency shall use best efforts to support the enforcement of federal immigration law." La. Stat. Ann. §§ 33:82; 33:83. The term "sanctuary policy" is defined as follows:

> a law, policy, practice, procedure, or custom adopted or allowed by a state entity or local governmental entity which prohibits or impedes a law enforcement agency from complying with 8 U.S.C. 1373 or which prohibits or impedes a law enforcement agency from communicating or cooperating with a federal immigration agency so as to limit that law enforcement agency in, or prohibit the agency from, any of the following:
> (a) Complying with an immigration detainer.
> (b) Complying with a request from a federal immigration agency to notify the agency before the release of a detainee in the custody of the law enforcement agency.
> (c) Providing a federal immigration agency access to a detainee for interview.
> …

Id. § 33:81(6). The State contends that this statute amounts to a change in state law applicable to immigration detainers.[1] The Court allowed the State to intervene to pursue the present Motion to Terminate or Dissolve the Consent Decree (Rec. Doc. 157). The plaintiffs oppose, arguing among other things that Act 314 cannot be considered a change in law impacting the consent decree in this case because (1) Act 314 was not intended to apply to existing consent decrees like the one at

---

[1] The State also argued that the consent decree should be terminated under the Prison Litigation Reform Act ("PLRA"), which contains certain provisions concerning prospective injunctive relief. The Court has ruled that the PLRA is inapplicable to this case. (Rec. Doc. 178).

3

issue here, as reflected by the text of the statute and the legislative history; (2) Act 314 is unconstitutional as an infringement of Louisiana's constitutional protection of home rule, and (3) Act 314 is invalid because it requires expenditures from local government without the requisite funds.

### III. DISCUSSION

The validity of Act 314 and its applicability to the consent decree is a threshold issue in this case. The State argues that the consent decree must be terminated either because it has been "satisfied, released, or discharged" as contemplated by the first clause of Federal Rule of Civil Procedure 60(b)(5) or because it is no longer equitable to enforce the consent decree as contemplated by the third clause of Rule 60(b)(5). If Act 314 is valid and applicable to the consent decree, then this Court must find that it amounts to a change in law that releases or dissolves the consent decree by its own terms. If Act 314 is invalid, or valid but inapplicable to the consent decree, then Act 314 cannot be a change in law that could dissolve the consent decree and it cannot reflect the public interest in restricting policies that limit cooperation with federal immigration enforcement.

As to the applicability of Act 314 to the consent decree, the plaintiffs argue that the Act prohibits the adoption or having of a sanctuary policy and defines a sanctuary policy as "a law, policy, practice, procedure, or custom adopted or allowed by a state entity or local governmental entity," but does not include a consent decree or legal remedy for constitutional violations in the list. Plaintiffs insist that by failing to include consent decrees and judicial remedies, the legislature must have intended to exclude them. Additionally, they cite the legislative history. In the cited video recordings of the legislative sessions, Representative Landry states that the bill should not

affect the Orleans Parish Sheriff's Office being able to "take on the decree," [2] and Senator Miguez states that "in the case of New Orleans, the bill does not violate the consent decree."[3] Immediately following that statement, Miguez explains that the law would not require local agencies to enforce federal immigration law or investigate immigration status and that the law only applied to illegal immigrants who commit crimes. Plaintiffs argue that the legislature did not intend Act 314 to apply to consent decrees like this one and, therefore, there is no conflict between Act 314 and the consent decree.

The plaintiffs next argue that Act 314 unconstitutionally infringes on the home rule principles enshrined in the Louisiana Constitution. The 1974 Louisiana Constitution provides:

> Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted.

La. Const. Ann. art. VI, § 4. The City of New Orleans is a "pre1974 home rule government." New Orleans Campaign For a Living Wage v. City of New Orleans, 2002-0991 (La. 9/4/02), 825 So. 2d 1098, 1102. "'[A]lthough home rule does not entail complete autonomy,' 'in affairs of local concern, a home rule charter government possesses powers which within its jurisdiction are as broad as that of the state, except when limited by the constitution, laws permitted by the constitution, or its own home rule charter.'" Id. (quoting Miller v. Oubre, 96–2022, (La.10/15/96), 682 So.2d 231, 236, then Morial v. Smith & Wesson Corp., 2000-1132 (La. 4/3/01), 785 So. 2d 1,

---

[2] Louisiana House of Representatives, Archived Video, May 2024, at 2:27:38,
https://house.louisiana.gov/H_Video/VideoArchivePlayer?v=house/2024/may/0520_24_24RS_Day36 (last accessed Jan. 20, 2026, at 12:39 p.m.)

[3] Louisiana State Senate, Archived Video, March 2024, at 52:00
https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2024/03/032724SCHAMB (last accessed Jan. 20, 2026, at 12:39 p.m.)

14). Article VI thus "protects home rule governments from unwarranted interference by the state in their internal affairs." Id. at 1103.[4]

Finally, the plaintiffs argue that Act 314 is invalid as an unfunded mandate. Article 6, Section 14 of the Louisiana Constitution provides:

> No law or state executive order, rule, or regulation requiring increased expenditures for any purpose shall become effective within a political subdivision until approved by ordinance enacted, or resolution adopted, by the governing authority of the affected political subdivision or until, and only as long as, the legislature appropriates funds for the purpose to the affected political subdivision and only to the extent and amount that such funds are provided, or until a law provides for a local source of revenue within the political subdivision for the purpose and the affected political subdivision is authorized by ordinance or resolution to levy and collect such revenue and only to the extent and amount of such revenue.

La. Const. Ann. art. VI, § 14(A)(1). The provision essentially "restricts the state's power to enact legislation requiring the expenditure of funds by local political subdivisions unless certain conditions are met." Polk v. Edwards, 626 So. 2d 1128, 1144 (La. 1993).

The State does not address the plaintiffs' arguments that (1) Act 314 was not intended by the legislators to apply to this pre-existing consent decree, (2) Act 314 is invalid because it infringes on the "home rule" provisions of the Louisiana constitution, and (3) Act 314 is invalid as an unfunded mandate. Plaintiffs argue that these three questions should be certified to the Louisiana Supreme Court in the first instance.

The rules of the Louisiana Supreme Court authorize this Court to certify questions or propositions of Louisiana law to the Supreme Court of Louisiana if this Court determines that it has before it "questions or propositions of law of this state which are determinative of said cause

---

[4] Of note, though, Article VI, Section 9 provides a limitation to ensure "the powers granted to home rule governments will not be used to deprive the state government of its inherent powers." Id. Section 9(B) provides that "Notwithstanding any provision of this Article, the police power of the state shall never be abridged." La. Const. Ann. art. VI, § 9. "The police power of the state is best defined on a case-by-case basis; however, it has been generally described as the state's 'inherent power to govern persons and things, within constitutional limits, for promotion of general health, safety, welfare, and morals.'" Campaign For a Living Wage, 825 So. 2d at 1104 (quoting Smith & Wesson Corp., 785 So. 2d at 15).

independently of any other questions involved in said case and that there are no clear controlling precedents in the decisions of the supreme court of this state." La. Sup. Ct. R. 12, Sec. 1.

The threshold issue in this case concerns the validity and applicability of a state law. Plaintiffs' first theory of inapplicability implicates not only the text of the statute, but also the legislative history. The remaining two theories raised by plaintiffs concern the validity of the state law under state constitutional principals. Act 314 has been in force for less than two years, and there appear to be no state court decisions applying it, let alone considering its applicability to an existing consent decree or its validity under the Louisiana constitution. Certainly there is no controlling precedent that answers the questions plaintiffs raise.

The Louisiana Supreme Court is singularly qualified to provide this Court with an answer on how to interpret the substantive law of Louisiana. See Goodrich v. United States, 2021-00988 (La. 11/17/21), 327 So. 3d 492, 493 ("Certification promotes comity between the state and federal courts, permitting the highest court of the state to develop principles of state substantive law.") (Crichton, J., dissenting). Accordingly, this Court certifies the three threshold questions to the Louisiana Supreme Court.

## IV. QUESTIONS CERTIFIED

This Court respectfully requests that the honorable Louisiana Supreme Court address and answer the following questions:

1. Does Act 314 apply to the pre-existing consent decree at issue in this lawsuit in light of the text of the statute and the legislative history?

2. Is Act 314 invalid because it infringes on the "home rule" provisions of the Louisiana Constitution?

3. Is Act 314 invalid under Article 6, Section 14 of the Louisiana Constitution as an unfunded mandate?

V.    CONCLUSION

The Court disclaims any intent that the Louisiana Supreme Court confine its reply to the precise form or scope of the questions certified. Moreover, if the Louisiana Supreme Court determines a more effective formulation of the Court's questions, the Court defers to that formulation. The Court will transfer to the Louisiana Supreme Court the record and relevant briefing in this case upon request. The Court retains jurisdiction over this matter pending the Louisiana Supreme Court's response.

QUESTIONS CERTIFIED TO THE SUPREME COURT OF LOUISIANA

New Orleans, Louisiana, this 18th day of February, 2026.

_____
Janis van Meerveld
United States Magistrate Judge